712 So.2d 1174 (1998)
Michael W. OVERSTREET, Appellant,
v.
The STATE of Florida, Appellee.
No. 97-631.
District Court of Appeal of Florida, Third District.
June 17, 1998.
*1175 Bennett H. Brummer, Public Defender and Maria E. Lauredo, Assistant Public Defender, Miami, for appellant.
Robert A. Butterworth, Attorney General and Doquyen T. Nguyen, Assistant Attorney General, for appellee.
Before GREEN, FLETCHER and SHEVIN, JJ.
GREEN, Judge.
We reverse the appellant's conviction and sentence for robbery and remand for a new trial based upon our conclusion that the trial court clearly erred when it overruled his Neil[1] objection to the State's exercise of one of its peremptory challenges during the voir dire proceeding.
Appellant Michael W. Overstreet, an African-American, was charged with one count of strong arm robbery. The State's eye witness in this case is Hispanic. During the voir dire proceeding, the State exercised the first of its three peremptory challenges against an African-American female without objection. When the State attempted to exercise its second peremptory challenge against another African-American female, Ms. Vernice Thomas, defense counsel interposed an objection on the grounds that the challenge was racially motivated and requested a Neil inquiry. As its race-neutral reason for the strike, the State proffered essentially, that Ms. Thomas had indicated a problem with accepting testimonial evidence as evident by her assertion that "she would have to see it to believe it." In response, defense counsel pointed out that another prospective juror, Ms. Olga Barrera, a white Hispanic female selected to serve on the jury, had also provided essentially the same responses as Ms. Thomas regarding testimonial evidence. Defense counsel further pointed out that whereas the State had made extensive efforts to rehabilitate Ms. Barrera, no similar attempts at rehabilitation had been made with Ms. Thomas. Defense counsel lastly pointed out that Ms. Thomas is African-American, as is Overstreet, and Ms. Barrera is Hispanic as is the State's eyewitness.
Relying upon its recollection of the voir dire responses, the court concluded that whereas Ms. Thomas's responses indicated an emphatic reluctance to accept testimonial evidence, Ms. Barrera was more open to the use of such evidence. Thus, the trial court found the State's proffered reason for striking Ms. Thomas to be race-neutral and overruled the defense's objection. Ms. Barrera went on to serve on the jury which convicted the appellant. Prior to the jury being sworn, however, the defense did renew its objection to the State's exercise upon peremptory challenge to Ms. Thomas. Thus, this issue has been appropriately preserved for appellate review. See Joiner v. State, 618 So.2d 174, 176 (Fla.1993).
Based upon the record before us, we cannot agree that the State's proffered reason for striking Ms. Thomas from the jury was non-pretextual and genuine. Although we have no doubt that the trial court was well-meaning and acting in good faith, we believe that the trial court was unfortunately led into error by virtue of its incorrect recollection of the responses given by Ms. Thomas and Ms. Barrera. Apart from her responses given in response to the State's attempted rehabilitation, Ms. Barrera's ultimately expressed thoughts about eye witness testimony was not appreciably different from those given by Ms. Thomas:
[Prosecutor]: Anybody here saying I'm [sic] the type of person I got to see it to believe it. Ms. Thomas, usually my hearing is pretty bad. Okay. You got to see it to believe it?
[Juror Thomas]: Right.

*1176 [Prosecutor]: Okay. If one person told how they saw me holding a pen that's not good for you?
[Juror Thomas]: I don't know.
[Prosecutor]: What about two people?
[Juror Thomas]: I don't know.
[Prosecutor]: You don't know. You better see it to believe it?
[Juror Thomas]: Right.
[Prosecutor]: Anyone else feel that same way? Ms. Barrera. Okay. You have to see it to believe it?
[Juror Barrera]: Well, I need more evidence.
[Prosecutor]: So the testimony alone is not enough for you, or just that the testimony of just one person?
[Juror Barrera]: It depends on the people.
[Prosecutor]: Okay. It depends on the people that come in and testify.
[Juror Barrera]: Right.
[Prosecutor]: If it's just one person who comes in and testifies, and they tell you they saw her holding the pen, but there is no video tape because I was holding the pen outside, and there is no little cameras set up all over the place.
But if one person just tells you, well, I saw her, she was outside, she was holding the pen, and that's it.
That would not be enough for you? Are you not sure? It depends on
[Juror Barrera]: I am not sure.
[Prosecutor]: It depends on the person who is testifying?
[Juror Barrera]: Right.
[Prosecutor]: Okay. What if two people tell you, yes, she's holding the pen, and they describe the pen and she was probably holding it. Would two people be sufficient for you?
[Juror Barrera]: No.
[Prosecutor]: What if the pen was found on the floor next to where I was standing? And so the pen is here, but there is no video tape, and no photograph of me holding the pen. How is that? Does that make a difference to you?
[Juror Barrera]: Of course.
[Prosecutor]: Right. But the fact that the pen was on the floor, and I'm standing near me [sic] on the floor, or on the floor next to where I was standing, would that make you more likely to think that the testimony or the witness is telling you that I was holding the pen?
Would that make it more likely to believe him, or still no?
[Juror Barrera]: I need more facts.
[Prosecutor]: You need more facts. Okay. Does anybody else feel that same way Ms. Thomas or Ms. Barrera told me, that they need a little bit more? (emphases added)
* * * * * *
Notwithstanding the State's attempted rehabilitation of Ms. Barrera, it affirmatively appears that she ultimately remained just as dubious about accepting testimonial evidence as did Ms. Thomas. Indeed, the quoted excerpt reveals that even the state recognized as much. The State's justification for striking Ms. Thomas, therefore, can hardly be deemed non-pretextual.
The exercise of a race-based peremptory challenge has long been declared invalid both by our state and federal supreme courts. See Batson v. Kentucky, 476 U.S. 79, 80, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); State v. Neil, 457 So.2d 481, 486 (Fla.1984); see also Daniel v. State, 697 So.2d 959, 960 (Fla. 2d DCA 1997). In an effort to assist the trial bench in identifying and eliminating race based challenges as well as ethnic, gender, and religious based challenges, the Florida Supreme Court has outlined and refined a procedure to be employed when an objection to such a challenge is made. Most recently in Melbourne v. State, 679 So.2d 759 (Fla.1996), the court enunciated the following three step process:
[Step 1:] A party objecting to the other side's use of a peremptory challenge on racial grounds must: a) make a timely objection on that basis, b) show that the venireperson is a member of a distinct racial group, and c) request that the court ask the striking party its reason for the strike. If these initial requirements are met ..., the court must ask the proponent *1177 of the strike to explain the reason for the strike.
[Step 2]: At this point the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation.
[Step 3]: If the explanation is facially race-neutral and the court believes that, given all the circumstances surrounding the strike, the explanation is not a pretext, the strike will be sustained. The court's focus in step 3 is not on the reasonableness of the explanation but rather its genuineness.

Id. at 764 (footnotes omitted)(emphasis added). In this case, there was full compliance with step one and arguably step two since the State's proffered reason for striking Ms. Thomas was race-neutral on its face. The problem is that other circumstances surrounding this strike in the record make it abundantly clear that the State's proffered reason for this strike was defacto disingenuous and pretextual. For that reason, the State, as the proponent of the strike, failed to carry its burden under step three, and the strike should not have been allowed.
In recognition of the fact that lawyers who seek to improperly exercise race based peremptory challenges will no doubt attempt to use various subterfuges to camouflage their actions, the supreme court adopted a nonexclusive list of five factors to guide the trial bench in its evaluation of whether a proffered reason for a strike is in fact an impermissible pretext:
(1) alleged group bias not shown to be shared by the juror in question;
(2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror,
(3) singling the juror out for special questioning designed to evoke a certain response,
(4) the prosecutor's reason is unrelated to the facts of the case, and
(5) a challenge based on reasons equally applicable to jurors who were not challenged.
State v. Slappy, 522 So.2d 18, 22 (Fla.1988). The presence of one or more of these factors will tend to show that the proffered reason is an impermissible pretext. See id. at 22. In this case, we note the presence of two such factors. First, the State made only a perfunctory or cursory examination of Ms. Thomas as to her uncertainty about accepting testimonial evidence, and indeed sought to rehabilitate Ms. Barrera who had similarly expressed uncertainties about accepting such evidence. Secondly, notwithstanding the State's attempted rehabilitation, Ms. Barrera ultimately remained just as dubious or uncertain (if not more) about relying solely upon testimonial evidence as did Ms. Thomas. Thus, since the State's proffered reason for striking Ms. Thomas was equally applicable to Ms. Barrera, who was not stricken, it can hardly be deemed non-pretextual. See Daniel, 697 So.2d at 960; Stroud v. State, 656 So.2d 195, 196-97 (Fla. 2d DCA 1995); Givens v. State, 619 So.2d 500, 502 (Fla. 1st DCA 1993); Richardson v. State, 575 So.2d 294, 295 (Fla. 4th DCA 1991); Floyd v. State, 511 So.2d 762, 765 (Fla. 3d DCA 1987).
It occurs to us from the record that the State was successful in camouflaging the pretextual nature of its strike of Ms. Thomas only because of the lower court's faulty recollection of the responses given during voir dire. Although we are not unmindful of the tremendous pressures and time constraints already placed upon our trial bench, we believe that when there is a genuine dispute between opposing counsel and/or between counsel and the court as to a particular voir dire response, the more prudent course would be for the court reporter's notes on the disputed areas of the record to be reread prior to a ruling on a Neil objection. In this way, the trial court can reasonably be assured that its ruling is fully supported by the record.
For all of these reasons, the appellant's conviction and sentence for robbery are reversed and this cause is remanded for a new trial.
Reversed.
NOTES
[1] State v. Neil, 457 So.2d 481 (Fla.1984).