733 So.2d 1128 (1999)
Keith BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 98-0325.
District Court of Appeal of Florida, Fourth District.
June 9, 1999.
Richard L. Jorandby, Public Defender, and Steven H. Malone, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Joseph A. Tringali, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
Appellant was convicted of trafficking in a prescription drug. He raises two issues which require reversal: (1) allowing the state to strike a black juror because he believed that police are racially biased, and (2) unfounded references to criminal organizations by the prosecutor.
*1129 The state's case consisted primarily of two witnesses. A detective testified that while she was hiding in a confidential informant's truck, she observed the confidential informant receive a plastic bag containing white pills from appellant. A chemist testified that the pills contained the requisite amount of oxycodone to support the charge of drug trafficking.
As his first point, appellant, who is black, argues that the trial court erred in allowing the state to strike juror Holmes, who is black, when a white juror who had given similar answers regarding general bias by police officers was not stricken.
After the prosecutor asked whether any prospective jurors felt that, as a general rule, police arrest people in a prejudicial manner, a white juror with a beard expressed the view that he was more apt to be stopped than a person who did not have a beard and dressed more conventionally than he did. Holmes then said that he agreed with the first juror. When further questioned, Holmes explained that he did not mean that it was a general rule, but rather that it did happen.
At that point the prosecutor agreed that it unfortunately happened, but that what he was trying to find out was whether the jury pool felt in general that police pulled people over because they had a beard or were Jewish or were black. Holmes responded that some police did. The state then mischaracterized Holmes' opinion by asking:
Getting back to [what] Mr. Holmes and Mr. Johnson were talking about, does anyone feel the way Mr. Holmes and Mr. Johnson did, that the police are prejudiced, as a general rule, they're prejudiced when they arrest people? They make their arrests based on a feeling, maybe a feeling they have toward a particular group?
Another juror then responded that he did not think that police were prejudiced but that they were "guilty of automatically assuming that you're guilty." Holmes then said:
That's the same point I'm trying to say. It's not that they are all prejudiced, I don't think they're prejudiced, but the same thing he's saying, they look at you a certain way and they just assume something.
The state asked if he meant that they looked at him in particular, to which Holmes replied "people" in general. When the state asked if he meant "particular types of people in the community," Holmes replied, "I don't know. I can't say on that."
After the state challenged two jurors for cause and used one peremptory challenge, it used a peremptory challenge on Holmes and, when appellant objected, the state gave the following reason:
Judge, my recollection of Mr. Holmes responses to questions regarding prejudice by the police and when they effectuate arrests, he felt they did exude some type of prejudice when they effectuate arrests.
The trial court agreed, stating it had "prejudice" written in its notes and found the state's reason to be genuine, although appellant objected and argued that Holmes' answers to questions did not indicate that he believed the police were prejudiced based on race.
In Overstreet v. State, 712 So.2d 1174, 1177 (Fla. 3d DCA 1998), the third district observed that in State v. Slappy, 522 So.2d 18, 22 (Fla.1988):
the supreme court adopted a nonexclusive list of five factors to guide the trial bench in its evaluation of whether a proffered reason for a strike is in fact an impermissible pretext:
(1) alleged group bias not shown to be shared by the juror in question;
(2) failure to examine the juror or perfunctory examination, assuming neither the trial court nor opposing counsel had questioned the juror,

*1130 (3) singling the juror out for special questioning designed to evoke a certain response,
(4) the prosecutor's reason is unrelated to the facts of the case, and
(5) a challenge based on reasons equally applicable to jurors who were not challenged.
Although the procedure for examining peremptory challenges was refined in Melbourne v. State, 679 So.2d 759 (Fla.1996), Melbourne did not recede from the factors adopted in Slappy, or the holding that: "The presence of one or more of these factors will tend to show that the proffered reason is an impermissible pretext." Slappy, 522 So.2d at 22.
Appellant argues that one Slappy factor existing in this case was that the alleged group bias was not established in Holmes. We agree, because it is clear from this record that Holmes qualified his answer by stating that only some, not all, police were prejudiced. The prosecutor then mischaracterized Holmes response and asked other jurors if they were prejudiced like Holmes was. This mischaracterization unfortunately influenced the trial court to have an incorrect recollection of Holmes' views. This was the same thing that occurred in Overstreet and recently in this court in Michelin North America, Inc. v. Lovett, 24 Florida Law Weekly D859, 731 So.2d 736 (Fla. 4th DCA 1999).
As a second Slappy factor, appellant argues that a white woman named McElroy described an incident in which the police had stopped her son for a traffic infraction and accused his passenger of having drugs for no reason. She observed that there are some police officers who probably "overdo their job," but then qualified the comment not to apply to all officers. The state did not strike her.
Under Melbourne, a trial court's decision in allowing a peremptory challenge will be affirmed unless it is clearly erroneous. 679 So.2d at 765. We have no trouble concluding that allowing the state to strike Holmes was clearly erroneous in this case. Just as in Overstreet and Lovett, the trial court erred as a result of not having an accurate recollection of the juror's answers when counsel exercising the strike misrepresented the answers. Although we have other reasons for reversing in the present case, it was the only reason for reversal in Lovett, an appeal of a thirty million dollar verdict after a four week trial, and in Overstreet, an appeal of a robbery conviction. Judge Green's observation in Overstreet is thus worth repeating:
It occurs to us from the record that the State was successful in camouflaging the pretextual nature of its strike of Ms. Thomas only because of the lower court's faulty recollection of the responses given during voir dire. Although we are not unmindful of the tremendous pressures and time constraints already placed upon our trial bench, we believe that when there is a genuine dispute between opposing counsel and/or between counsel and the court as to a particular voir dire response, the more prudent course would be for the court reporter's notes on the disputed areas of the record to be reread prior to a ruling on a Neil objection. In this way, the trial court can reasonably be assured that its ruling is fully supported by the record.
712 So.2d at 1177.
Although we are not condemning the state's inquiring about whether jurors believe that police officers are racially biased in the manner in which they enforce the law, facts supporting these beliefs are beginning to emerge. At least one state, New Jersey, has now admitted that its law enforcement officers engaged in racial profiling, as a result of which blacks and Hispanics were more than three times as likely to be searched as whites.[1] Challenges *1131 based on the specific attitude involved in this case should, therefore, be carefully examined by trial judges to make sure that there is truly group bias. In some cases, it may be necessary to specifically question the challenged jurors concerning their beliefs regarding police bias and the effect that such beliefs may have upon their ability to serve as fair and impartial jurors. Given the widely held perception among blacks that they are disproportionately targeted by police officers for traffic stops and arrests, subjecting potential black jurors to peremptory strikes merely for sharing such beliefs, without more, would cause this explanation for the peremptory strike to lose its character as "race neutral" and possibly fall into the third Slappy category: singling the juror out for special questioning designed to evoke a certain response.
The second point on appeal involves the fact that on voir dire the state described a confidential informant as a person who provides information to law enforcement by infiltrating "different types of criminal organizations." Appellant argues, and we agree, that on retrial the state should not make any reference to criminal or drug organizations because it suggests that the defendant is involved in more crimes than for which he is on trial.
We also agree with the appellant that under the facts of this case the state should not have denigrated appellant's defense in closing argument by suggesting that it was a smoke screen. Waters v. State, 486 So.2d 614 (Fla. 5th DCA 1986). In the present case there was a legitimate issue of police officer credibility, because of a change in testimony. Under these circumstances appellant's position should not have been so ridiculed by the state. Miller v. State, 712 So.2d 451 (Fla. 2d DCA 1998). Belittling a defense by the use of the term "smoke screen" may not always be error, Ham v. State, 580 So.2d 868 (Fla. 3d DCA 1991), but it was inappropriate in this case.
Reversed and remanded for a new trial.
TAYLOR and HAZOURI, JJ., concur.
NOTES
[1] New York Times, Apr. 21, 1999, Apr. 30, 1999, May 1, 1999. See also Angela J. Davis, Race, Cops, and Traffic Stops, 51 U. Miami L.Rev. No. 2 (Jan.1997); United States v. Pruitt, 12 Fla. L. Weekly Fed. C805, 174 F.3d 1215 (11th Cir.1999)("we are concerned that this appears to be yet another case in which a driver, once stopped is unreasonably detained because of his/her race or national origin.")