967 So.2d 972 (2007)
Roberto LIDIANO, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D05-2898.
District Court of Appeal of Florida, Third District.
October 24, 2007.
*973 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Bill McCollum, Attorney General, and Maria T. Armas, Assistant Attorney General, for appellee.
Before RAMIREZ, ROTHENBERG, and LAGOA, JJ.

On Motion for Rehearing
ROTHENBERG, Judge.
We grant the appellant's motion for rehearing, withdraw our former opinion dated May 9, 2007, and substitute the following opinion in its stead.
The defendant, Roberto Lidiano, appeals from his convictions and sentences for two counts of attempted second degree murder. He claims that the trial court erred in denying his peremptory challenge of a juror, Emelia Abadin ("Ms. Abadin"), and in denying his motions for mistrial made during the testimony of the lead detective. We affirm.
The defendant was charged with the attempted first degree murders of Yoraidyl Rodriguez (Count 1) and Lorenzo Retureta (Count 2). Prior to trial, the trial court excluded Ms. Rodriguez as a witness based on the State's inability to locate her.
During jury selection, when defense counsel attempted to use a peremptory challenge to strike juror Ms. Abadin, the State requested that the defense proffer a race and/or gender neutral reason. In response, the defense stated that Ms. Abadin could not relate to the charged crimes because she lives in Kendall and the alleged crimes occurred in Hialeah; she had previously served on civil and criminal juries; and her nephew is an attorney. The trial court specifically noted that "Ms. Abadin is female, she's also Hispanic," and concluded that the reasons given by defense counsel for exercising his challenge to Ms. Abadin were not genuine and were pretextual. The record reflects that Ms. Wong, who is not Hispanic, was not challenged by the defense. Like Ms. Abadin, Ms. Wong responded that she was not from Hialeah. She lives in Palmetto Bay, which is located in the Kendall area. Also similar to Ms. Abadin, Ms. Wong responded that her two children are attorneys and the record reflects that she had previously served on a jury. The trial court disallowed the challenge, defense counsel accepted the jury subject to his objection to Ms. Abadin, and both Ms. Abadin and Ms. Wong sat on the jury which convicted the defendant.
The only eyewitness who testified against the defendant was one of the alleged victims, Mr. Retureta. Mr. Retureta testified that he is the owner of a restaurant/bar in Hialeah and the defendant was a regular customer who came in two to three times a week. On the evening of *974 December 9, 2004, while the defendant was at the restaurant, he called Ms. Rodriguez, a waitress at the restaurant, a name, and when she slapped him, he threw a bottle at her. Mr. Retureta had the defendant removed from the restaurant. As the defendant was exiting, he warned that he would be back. The defendant returned to the restaurant and began shooting at Mr. Retureta, who tried to defend himself by throwing bottles at the defendant. The defendant then fired shots at Ms. Rodriguez and again at Mr. Retureta. When the police responded, Mr. Retureta described the incident but told the police that he did not know the person who had fired the shots. At trial, Mr. Retureta explained that this was untrue, that he did know the defendant, and that he had lied to the police because he had initially wanted to take care of the problem himself.
Mr. Retureta testified that, approximately five days after the shooting, the defendant returned to the restaurant and told him that he wanted to forget about the incident and "remain friends." When Mr. Retureta told the defendant that he could not be his friend, the defendant warned once again that he would be back. When Mr. Retureta realized he could not take care of the situation himself, as he had originally hoped, he called the police and spoke with Detective Elosegui, the officer who had originally investigated the shooting. Mr. Retureta provided Detective Elosegui with the defendant's first name, and he eventually was able to provide Detective Elosegui with the defendant's surname and the name of the car wash where he believed the defendant worked. Based upon the information Mr. Retureta provided to the police, a photographic line-up was prepared and shown to Mr. Retureta, who immediately positively identified the defendant as the shooter. The defendant was arrested, and after waiving his Miranda rights, he denied being in the restaurant on the night of the shooting or being involved. The defendant further claimed that he had never been in that restaurant and denied knowing anyone who worked there.
The jury found the defendant guilty of two counts of attempted second degree murder, the lesser included offense of attempted first degree murder, and the defendant was sentenced accordingly.

THE TRIAL COURT'S DENIAL OF THE DEFENDANT'S PEREMPTORY CHALLENGE
The defendant contends that the trial court erred in denying his peremptory challenge of Ms. Abadin. Specifically, the defendant argues that: 1) the trial court erred by finding that the proffered reasons were not genuine and were pretextual without engaging in an oral genuineness analysis and in not articulating the basis for the court's findings, and 2) the reasons proffered by the defense were genuine and non-pretextual.
We begin our analysis, as we must, from the perspective that recognizes that a trial court's decision to accept or reject an attorney's explanation for the peremptory challenge of a juror turns primarily on an assessment of the attorney's credibility, which must be affirmed on appeal unless clearly erroneous. Melbourne v. State, 679 So.2d 759, 764-65 (Fla.1996) ("[T]he trial court's decision [regarding peremptory challenges] turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous."); Reed v. State, 560 So.2d 203, 206 (Fla.1990) (holding that trial judges are vested with broad discretion in determining whether peremptory challenges are racially motivated and "we must necessarily rely on the inherent fairness and color blindness of our trial judges who are on the scene and who themselves get a `feel' for what is going on in the jury selection process"); *975 see also Watson v. State, 841 So.2d 659, 660 (Fla. 4th DCA 2003); Anderson v. State, 750 So.2d 741, 743 (Fla. 3d DCA 2000); Young v. State, 744 So.2d 1077, 1082 (Fla. 4th DCA 1999); Greene v. State, 718 So.2d 334 (Fla. 3d DCA 1998).
The defendant argues that the trial court erred in failing to orally perform a genuineness analysis and to articulate the basis for its ruling denying defense counsel's peremptory challenge of Ms. Abadin. We disagree.
The trial court is not required to orally perform its genuineness analysis or to articulate the basis for its ruling. While this court has previously held that "where the objecting party challenges the explanation as being pretextual, the trial court would be wise to articulate its finding of genuineness, or lack of genuineness, in order to facilitate appellate review," Davis v. State, 691 So.2d 1180, 1183 (Fla. 3d DCA 1997), it is clear that there is no requirement to do so. See Johnson v. State, 706 So.2d 401, 404 (Fla. 3d DCA 1998) ("There is nothing in Melbourne which requires trial judges to articulate their thought process on the issue of pretext."); Watson v. State, 841 So.2d 659, 661 (Fla. 4th DCA 2003); Sharp v. State, 789 So.2d 1211, 1213 (Fla. 5th DCA 2001). Thus, the trial court's failure to orally perform its genuineness analysis or to articulate its thought process in finding that the proffered reasons were pretextual and not genuine does not warrant reversal.
The defendant also argues that the reasons proffered by the defense were genuine and thus the trial court erred in denying its peremptory challenge of Ms. Abadin. In support, the defendant argues that the State's Neil/Slappy/Melbourne objection was based upon gender, and the record does not support a finding that Ms. Abadin was challenged by the defense due to her gender because the jury selected was comprised entirely of women. The record, however, reflects that the State's objection was based upon both Ms. Abadin's gender and her ethnicity, and that the record supports a finding that she was challenged by the defense based upon her Hispanic heritage.

DEFENSE: We'll exercise a strike on No. 6, Ms. Abadin.

STATE: We'll ask for a raise [sic] neutral, gender neutral reason based on the fact that she a[sic] protected class, she's a woman.

DEFENSE: We are talking about a different neighborhood. She's from Kendall. She's been on a jury before, not only in civil but criminal and an attorney for a nephew.

COURT: Ray Abadin.

DEFENSE: Yeah.

COURT: Practices in a civil trial firm, Abadin, Hyro, and I believe, his wife too.

DEFENSE: I know who he is. His son played basketball with my son. But they're from a different neighborhood. She also has prior jury experience not only on civil but in criminal cases and we didn't feel comfortable with her based upon those reasons.

COURT: Anything else?

DEFENSE: No Sir.

COURT: Ms. Abadin is female, she's also Hispanic. The Court finds that the reasons given for the exercise of the peremptory are not genuine and are pretextural [sic] and I'm going to deny that one. Any other's defense?
(Emphasis added).
It is clear from this exchange that the State's objection to defense counsel's challenge to this juror was based upon both her gender and ethnicity; the trial court understood that the objection was based upon both of these factors; and the trial court's finding was made after consideration *976 of both Ms. Abadin's gender and her ethnicity.
As previously stated, the decision to deny a peremptory challenge requires an assessment of motive and credibility. Credibility is a matter solely within the purview of the finder of fact. Thus, a trial court's ruling on the genuineness of a peremptory challenge will be affirmed on appeal unless clearly erroneous. Smith v. State, 699 So.2d 629, 637 (Fla.1997). Although the trial court did not orally conduct its genuineness analysis, a review of the transcript of the voir dire proceedings reveals that there is record support for the trial court's findings.
In seeking to peremptorily strike juror Ms. Abadin, the defense proffered three reasons: 1) she cannot relate to the charged crimes because she lives in Kendall and the alleged crimes occurred in Hialeah; 2) she had previously served on criminal and civil juries; and 3) her nephew is an attorney. The record demonstrates that Ms. Wong, who was not challenged by the defense and sat on the jury that convicted the defendant, has a similar background to that of Ms. Abadin. Like Ms. Abadin, Ms. Wong does not live in Hialeah. Rather, she lives in Palmetto Bay, which, like Kendall, is not in close proximity to Hialeah. Although the defense proffered that he was striking Ms. Abadin because her nephew is an attorney, the record reflects that Ms. Wong has two children who are attorneys. Finally, the information relating to Ms. Abadin's prior jury service apparently was provided by Ms. Abadin in a written juror questionnaire, and she was never questioned by either the defense or the State about her prior jury service. Based on the information provided by the parties in their briefs, however, it appears that both Ms. Abadin and Ms. Wong sat on juries. Ms. Wong previously sat on a civil jury, and Ms. Abadin sat on both civil and criminal juries. Ms. Abadin, the juror defense counsel attempted to peremptorily challenge, was the only Hispanic who ultimately sat on the jury. As we cannot conclude that the trial court's finding as to genuineness was clearly erroneous, we affirm the trial court's ruling.
The dissent posits that the prosecutor's objection to the striking of Ms. Abadin was based upon her gender, not on her ethnicity, and that it was the trial judge who injected Ms. Abadin's ethnicity into the State's objection. Based upon this premise, the dissent expresses its concern that the defense may not have been "given an opportunity to contradict such a contention." First, we note that this argument was not raised by the defense on appeal. Second, we disagree that the State's objection was limited to the gender of the juror. Lastly, we note that the trial court specifically noted that "Ms. Abadin is a female, she's also Hispanic," and concluded, after performing an analysis, that the reasons proffered were not genuine. Had defense counsel been surprised by the fact that the trial court's pretextual analysis included consideration of her ethnicity, counsel could have objected and asked the trial court to allow him to provide an additional response or argument. Defense counsel did neither, and thus, did not preserve the issue for appellate review.
The dissent also asserts that Ms. Wong (who is not Hispanic) and Ms. Abadin (who is Hispanic) are not similarly situated because, while the defense knew Ms. Abadin's nephew, there is no evidence that the defense knew Ms. Wong's children, who are also attorneys, but who work out of state. As this argument was not raised by the defense at trial, we find that the dissent's concerns apparently were not shared by defense counsel, or if shared, were not expressed on the record and, therefore, not preserved.

*977 THE DEFENDANT'S MOTIONS FOR MISTRIAL

The defendant also contends that the trial court abused its discretion in denying his motions for mistrial during the testimony of Detective Elosegui. While the State prosecuted the defendant for two counts of attempted first degree murder, directed towards two separate victims, only one victim, Mr. Retureta, appeared and testified at trial. As he was present and witnessed the entire criminal episode, he provided evidence sufficient to sustain convictions for both charges.
The first motion for mistrial occurred when Detective Elosegui was asked by the prosecutor to explain what he did while at the scene of the shooting, to which he stated, "I got the story from the victim and I called the second victim which was consistent with the story of the victim. . . ." The defendant immediately objected on hearsay grounds and moved for a mistrial. The trial court correctly recognized that the objected-to testimony was inadmissible hearsay, sustained the objection, gave a curative instruction, and denied the motion for mistrial.
After carefully reviewing the entire record, we conclude that, based upon the circumstances of this case, the trial court did not abuse its discretion in denying the defendant's motion for mistrial. After the defendant was arrested, he was advised of his Miranda rights, he waived those rights, and he provided a statement to the detective, which was introduced at trial. Lidiano claimed that he did not commit the crimes, that he was not in the restaurant that day or at any other time, and that he did not know anyone who worked there. He claimed that if the crimes were committed, he was not the person who committed them.

DIRECT EXAMINATION OF DETECTIVE ELOSEGUI

STATE: Did you ask Mr. Lidiano about the incident?

DETECTIVE: Yes.

STATE: Did you ask Mr. Lidiano if he was there at the time of the incident?

DETECTIVE: Yes.

STATE: What was his response?

DETECTIVE: His response was, no he's never been to the location before.

STATE: Did you ask if he knew Mr. Retureta?

DETECTIVE: Yes.

STATE: What was his answer to that?

DETECTIVE: He said he knew no one at that location what-so-ever.

CROSS-EXAMINATION

DEFENSE: Now isn't it a fact that basically what Mr. Lidiano tells you is, he denied the charges, correct?

DETECTIVE: Correct.

DEFENSE: He didn't try to kill anybody?

DETECTIVE: He denied it, yes.

DEFENSE: That it was impossible because he'd never been at the restaurant?

DETECTIVE: That's correct.
. . . .

DEFENSE: Well, you just testified that, according to you, Mr. Lidiano said he knew nobody at the bar is that correct or no?

DETECTIVE: That's correct. That's what he led me to believe and what he said.

DEFENSE: Did he say that specifically?

DETECTIVE: Absolutely, yes.
While Detective Elosegui improperly inferred that the second victim provided consistent information regarding the shooting, *978 he made it clear that only Mr. Retureta was able to provide him with information as to the shooter's identity. He testified that based upon the information provided by Mr. Retureta, he responded to a car wash in an attempt to locate the shooter, who Mr. Retureta identified as "Robertico," a frequent customer of his establishment. The attempt to locate "Robertico" languished for nearly two months, until Mr. Retureta contacted Detective Elosegui and was able to provide him with the shooter's surname, "Lidiano." Based upon the information he obtained from Mr. Retureta, Detective Elosegui compiled a photographic line-up, which he showed to Mr. Retureta, and from which Mr. Retureta positively identified the defendant as the man who tried to kill him and Ms. Rodriguez. We conclude that the trial court did not abuse its discretion in denying the defendant's motion for mistrial because the improper statement by Detective Elosegui did not infer that the second victim, Ms. Rodriguez, provided any information regarding the identity of the shooter; Detective Elosegui made it clear that the identification of the defendant was based upon the information he obtained from Mr. Retureta; and the trial court sustained the objection and gave a curative instruction. See Seibert v. State, 923 So.2d 460, 471-72 (Fla.2006) (holding that a ruling on a motion for mistrial is within the sound discretion of the trial court); Gore v. State, 784 So.2d 418, 427 (Fla.2001) (holding that the trial court did not abuse its discretion in denying a motion for mistrial where the trial court sustained the objection and immediately instructed the jury to disregard the testimony); Goodwin v. State, 751 So.2d 537, 546-47 (Fla.1999) (holding that the trial court did not abuse its discretion by denying a motion for mistrial where the trial court sustained the objection and gave a curative instruction, and where the improper comment was not so prejudicial as to deny the defendant a fair trial).
Another motion for mistrial was made during the State's redirect of Detective Elosegui when the State asked the detective, "Was Ms. Rodriguez' statement consistent with Mr. Retureta?" However, before Detective Elosegui answered the question, the trial court stated, "Sustained. Don't answer that." Thereafter, defense counsel objected and moved for a mistrial, which the trial court denied. Based on the fact that the trial court did not allow Detective Elosegui to answer the question, and the information that the State was attempting to elicit would not have prejudiced the defendant as Ms. Rodriguez did not provide Detective Elosegui with any information regarding the shooter's identity, we conclude that the trial court did not abuse its discretion by denying the defense's motion for mistrial.
Two further motions for mistrial were made during Detective Elosegui's testimony when he was asked about what he discussed with the defendant post-arrest. The detective told the jury that the defendant denied being at the restaurant, even when the detective told him that there were witnesses who had seen him there. Detective Elosegui stated, "I asked Mr. Lidiano about the allegation, I told him about the allegations against him, that there were witnesses against him." The defense immediately objected, the trial court sustained the objection, and the defense moved for a mistrial, which was denied by the trial court. No curative instruction was requested or given. When asked what statements the defendant made during the interview, the detective responded, "I then told him that witnesses had seen him at the location and he again told me that it was impossible because he had never been at the restaurant." The defense objected and again moved for mistrial, which the trial court also denied.
*979 "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat. (2005). As defense counsel did not request a sidebar and there is no discussion in the record to guide us in our review as to whether the statement was offered for the truth of the matter asserted or whether, instead, it was simply a statement made by the detective to the defendant in an attempt to elicit an incriminating response from him, we cannot determine if these statements by Detective Elosegui qualify as hearsay statements.
If we treat the statements as hearsay, we agree with the defendant that these statements, if they had been admitted, would have been improper. Since the defendant denied being at the restaurant, any evidence that suggests that a non-testifying witness had seen the defendant there, or that indirectly implicates the defendant in the charged crimes, without providing the defendant with the ability to confront the witness(es), violates the defendant's right of confrontation. See Zuluaga v. State, 915 So.2d 1251, 1252 (Fla. 3d DCA 2005) (holding that when statements made by a non-testifying witness are introduced which "directly or by inference furnishes evidence of the defendant's guilt, it is hearsay and violates the defendant's right of confrontation"); Diaz v. State, 890 So.2d 556, 558 (Fla. 5th DCA 2005) ("Even though the witness does not quote or paraphrase the extrajudicial statement, when the inference to be drawn by the testimony is that an out-of-court declarant implicated the defendant in a crime, the testimony is hearsay and inadmissible."); Davis v. State, 493 So.2d 11, 13 (Fla. 3d DCA 1986) (holding that police officer's testimony was inadmissible hearsay where "the inescapable inference from such testimony was that a non-testifying witness had furnished evidence of guilt to the police"); Postell v. State, 398 So.2d 851, 854 (Fla. 3d DCA 1981) ("[W]here . . . the inescapable inference from the testimony is that a non-testifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated. . . .") (footnote omitted).
We conclude that the trial court, however, did not abuse its discretion in denying the defendant's motions for mistrial, as the trial court sustained the defendant's objections to the evidence in question and provided curative instructions. We additionally conclude that the objected-to evidence, which was not admitted, was not so prejudicial as to vitiate the entire trial. Duest v. State, 462 So.2d 446, 448 (Fla.1985) (holding that "a mistrial is appropriate only when the error committed was so prejudicial as to vitiate the entire trial"); Luton v. State, 831 So.2d 690 (Fla. 3d DCA 2002) (holding that mistrial should be granted only when improper comment was so prejudicial as to vitiate entire trial).
The shooter, who Mr. Retureta knew as "Robertico," was well-known to him as he had been a frequent customer, appearing two to three times a week. After the day of the shooting, which involved an earlier confrontation where the defendant was removed from the restaurant, and the later confrontation, where the defendant returned and shot at Mr. Retureta and Ms. Rodriguez, the defendant actually returned to the restaurant, spoke to Mr. Retureta, saying he wanted to still "remain friends." When told this was not possible, the defendant left and warned he would return. Mr. Retureta provided the police with a description of the shooter, told Detective Elosegui that he could easily identify him, and demonstrated that fact when he positively identified the defendant, Roberto Lidiano, without hesitation from a photographic lineup. He even directed the *980 detective to a car wash where he believed "Robertico" worked, and at trial, positively identified the defendant as the shooter. It is this evidence which the jury was asked to weigh against the defendant's claims that he had never been in Mr. Retureta's restaurant, did not know anyone who worked there, and was not involved. Based upon the record in this case, we conclude that the trial court did not abuse its discretion in denying the defendant's motions for mistrial.
The dissent argues that the injection of inadmissible hearsay through an experienced detective in this case requires reversal as it substantially affected Lidiano's right to a fair trial, and cites to several cases in support of this conclusion. We disagree with both the premise and the conclusion. First, and of critical importance, is the fact that the objected-to hearsay was not admitted in this case. On each occasion, defense counsel's objection was sustained, curative instructions were given when requested, and, in one instance, the trial court actually instructed the witness not to answer the question prior to any objection being levied by the defense.
This distinction is important, as in each of the cases relied upon by the dissent, the objection was overruled and the evidence was admitted. In Keen v. State, 775 So.2d 263 (Fla.2000), the objected-to hearsay testimony regarding the detective's investigation: (1) was admitted; (2) was relied upon by the State in closing argument; (3) implicated the defendant in the murder; and (4) included the insurance company's investigation and conclusions, which was verified by law enforcement. None of those factors are present in the instant case.
Likewise, in Wilding v. State, 674 So.2d 114 (Fla.1996), the Florida Supreme Court found that permitting the detective to testify that an anonymous witness implicated the defendant and that the defendant had been the subject of a nationally televised show about the country's most wanted suspects, constituted reversible error. In the instant case, the evidence did not implicate the defendant as it is clear that the non-testifying witness did not identify the person who committed the crimes; the defendant's objections to the evidence were sustained and the evidence was not admitted into evidence; and the jury was properly instructed that it must disregard the evidence and not allow it to influence its deliberations.
In Conley v. State, 620 So.2d 180 (Fla. 1993), the objected-to hearsay evidence was admitted and relied upon by the State in closing argument; in Devoney v. State, 717 So.2d 501 (Fla.1998), the issue was the propriety of the post-verdict juror inquiry and whether a new trial was required where the jury discussed inadmissible evidence during jury deliberations after being ordered by the trial court to disregard it, and is, therefore, inapplicable to the instant case; in State v. Baird, 572 So.2d 904 (Fla.1991), the objected-to inadmissible hearsay testimony was admitted but found to be harmless error not requiring a new trial; in Sankar v. State, 928 So.2d 1265 (Fla. 4th DCA 2006), the objected-to hearsay evidence (1) was the victim's prior consistent statement, (2) bolstered the victim's testimony, (3) specifically went to the guilt of the defendant, and (4) was admitted into evidence; and in Peterson v. State, 874 So.2d 14 (Fla. 4th DCA 2004), the victim's prior consistent statement identifying the defendant bolstered the victim's testimony, there was no physical evidence introduced, and the victim's credibility was the issue at trial.
A thorough reading of the cases relied upon by the dissent, therefore, reflects that in every single instance in which reversible error was found, the evidence was actually admitted into evidence, and in *981 most of the cases, the evidence implicated the defendant and was relied upon by the State to prove the defendant's guilt. None of these factors are present in the instant case. Based upon the facts in this case, including that the evidence was not admitted, curative instructions were given, and the evidence did not provide any insight or evidence of the defendant's guilt, we conclude that the error was harmless beyond a reasonable doubt.
Although the complained-of evidence was not introduced in the instant case, the dissent posits that reversal is required on the authority of Denmark v. State, 927 So.2d 1079 (Fla. 2d DCA 2006), wherein the Second District Court of Appeal reversed Denmark's convictions, finding that no curative instruction could have cured the error. Denmark, however, is not even remotely similar to the instant case. In Denmark, defense counsel moved in limine to preclude the introduction of the defendant's prior juvenile record. After a ruling in favor of the defendant, the prosecutor asked one of the defendant's expert witnesses: "And [Mr. Denmark] was thrown out of . . . school at age eleven when he phoned in a bomb threat, fair statement?" Id. at 1080. After admonishment by the court, the prosecutor asked additional questions regarding Denmark's juvenile past, voiced his displeasure with the court's rulings, and continued to refer to Denmark's juvenile offenses, demonstrating an "unwillingness to follow the trial court's rulings." Id. at 1081. After performing a harmless error analysis, the district court concluded that the improper remarks were of such a character that they could not be cured by a curative instruction, as the evidence was regarding prior bad acts totally irrelevant to the charged offenses. Without belaboring the point, these facts are quite different from those in the instant case.
Lastly, the dissent claims that the complained-of errors require reversal because "[t]his was a close case." Again, we disagree. The record reflects that despite Lidiano's sworn testimony that he did not know Mr. Retureta and that he had never been at Mr. Retureta's establishment, he had in fact frequented the establishment, ate and drank there two to three days a week, and the two men knew each other quite well. Because Lidiano was well-known to Mr. Retureta, the strength of Mr. Retureta's positive identification of Lidiano as the shooter cannot realistically be in doubt. The physical evidence also supports Mr. Retureta's statement as to what occurred that night. He claimed that Lidiano had been in the bar drinking, he became belligerent, obnoxious, and made an insulting comment to Ms. Rodriguez; Ms. Rodriguez slapped Lidiano; Mr. Retureta told Lidiano to leave; Lidiano left but returned; and when Lidiano returned, he fired several shots at both Mr. Retureta and Ms. Rodriguez. The State introduced photographs of the bullet holes and two projectiles recovered from the scene (one that was dug out of one of the bullet holes in the wall and one that struck and penetrated the side of a refrigerator and was found inside the refrigerator). Thus, the physical evidence substantiated Retureta's testimony of the events in question.
Lastly, no evidence even suggested that Mr. Retureta had any motive to implicate the defendant in a crime he did not commit. Prior to the incident, the two were friends and there had been no prior difficulties between them. The defendant, on the other hand, clearly had a motive. He had been drinking and when he called Ms. Rodriguez a "whore," she slapped him. This angered Lidiano, and when Mr. Retureta forced him to leave, this further enraged Lidiano. Since Lidiano lied about knowing Mr. Retureta; lied about ever being in the bar; had a motive to commit *982 the acts alleged; the physical evidence supports the testimonial evidence; and no motive was established or even suggested for Mr. Retureta to fabricate the events, we disagree with the dissent that "this was a close case," and its conclusion that the complained-of errors require reversal.
Affirmed.
LAGOA, J., concurs.
RAMIREZ, Judge. (dissenting).
Because I disagree with the majority on both issues, I respectfully dissent. Regarding the jury selection issue, the trial court erred in failing to perform a proper genuineness analysis when denying defense counsel's peremptory challenge of Ms. Abadin. Additionally, the trial court abused its discretion in denying Lidiano's motions for mistrial during the testimony of Detective Elosegui.

I. JURY SELECTION ISSUE
I believe the reasons defense counsel gave the trial court for using a peremptory challenge to strike Ms. Abadin were clearly gender neutral reasons. The trial court thus should have granted Lidiano's peremptory challenge of Ms. Abadin.
The proponent of a strike must show "a `clear and reasonably specific' racially neutral explanation of `legitimate reasons' for the [strike]." Melbourne v. State, 679 So.2d 759, 763 (Fla.1996). A race or gender neutral reason is one that is not based on race or gender. Washington v. State, 773 So.2d 1202, 1203-1204 (Fla. 3d DCA 2000); Johnson v. State, 706 So.2d 401, 403 (Fla. 3d DCA 1998).
The reasons defense counsel proffered here had nothing to do with gender. Defense counsel stated that he was seeking to challenge Ms. Abadin because she lived in the Kendall area, she had previously served on a jury, and her nephew was an attorney. Jones v. State, 787 So.2d 154, 156 (Fla. 4th DCA 2001)(juror's prior jury service and defense counsel's discomfort with the way in which the juror was looking at the defendant "were clearly facially gender neutral" reasons for peremptory challenge); James v. State, 768 So.2d 1221, 1222 (Fla. 3d DCA 2000)(juror's recent graduation from law school and indication during voir dire that she did not want to serve on the jury were both "race-ethnic-gender neutral reasons.").
Once the defense proffered gender neutral reasons, the trial judge was required to engage in the genuineness analysis, the third step in Melbourne. Melbourne, 679 So.2d at 764. "A trial court's genuineness inquiry involves consideration of factors which tend to show whether the proffered reason is pretextual." Scott v. State, 920 So.2d 698, 700 (Fla. 3d DCA 2006). The relevant circumstances that the trial court is to consider in determining whether the explanation is pretextual include factors such as the "racial make-up of the venire; prior strikes exercised against the same racial group; a strike based on a reason equally applicable to an unchallenged juror; or singling the juror out for special treatment." Melbourne, 679 So.2d at 764 n. 8; Jones v. State, 787 So.2d 154 (Fla. 4th DCA 2001); Overstreet v. State, 712 So.2d 1174, 1177 (Fla. 3d DCA 1998).
The trial court's decision on the ultimate issue of pretext turns primarily on an assessment of credibility and will be affirmed on appeal unless clearly erroneous. Melbourne, 679 So.2d at 764-65; Greene v. State, 718 So.2d 334, 335 (Fla. 3d DCA 1998). However, this Court and other courts have not hesitated to reverse a trial court's finding on the ultimate issue of pretext where the record does not support that finding. See Scott v. State, 920 So.2d 698 (Fla. 3d DCA 2006); Jones v. State, 787 So.2d 154 (Fla. 4th DCA 2001); Hamdeh v. State, 762 So.2d 1030 (Fla. 3d DCA 2000).
*983 In this case the trial judge merely stated, "the reasons given for the exercise of the peremptory are not genuine and are pretextural [sic]". The trial court did not discuss the matter with defense counsel or the prosecutor. The challenge of Ms. Abadin was defense counsel's first and only challenge of a female prospective juror. The jury which eventually tried the case was made up entirely of women. As such, there is no evidence here of gender discrimination by defense counsel. In addition, because there were no men seated on the jury, there can be no claim that the reasons given by defense counsel for challenging Ms. Abadin were equally applicable to an unchallenged male juror. Finally, there is no evidence in the record that defense counsel singled out Ms. Abadin for special treatment.
In sum, none of the relevant circumstances that a court is to consider in determining whether an explanation for a peremptory challenge is pretextual are present in the facts before us. Accordingly, the record does not support the trial judge's finding that the challenge of Ms. Abadin was pretextual.
In Jones v. State, 787 So.2d 154 (Fla. 4th DCA 2001), defense counsel sought to exercise a peremptory challenge against a juror based on the juror's prior jury service and because defense counsel was uncomfortable with the way the juror was looking at the defendant. Id. at 155. Following a discussion on the record, the trial judge denied the strike and stated, "[I] don't think it's a genuine strike." Id. The Fourth District reversed and remanded for a new trial, finding that the trial court had failed to engage in the genuineness analysis required by Melbourne. Id. at 157.
The Florida Supreme Court has repeatedly suggested what the relevant circumstances are that the court is to consider in determining whether the explanation is pretextual. These include (1) the racial makeup of the venire; (2) prior strikes exercised against the same racial group; (3) a strike based on a reason equally applicable to an unchallenged venireperson; or (4) singling out the venireperson for special treatment. See, e.g. Rodriguez v. State, 753 So.2d 29, 40 (Fla.2000). The Fourth District Court of Appeals in Jones stated:
We are cognizant of the cases holding that "`[t]here is nothing in Melbourne which requires trial judges to articulate their thought process on the issue of pretext.'" . . . But, here, where a gender or race neutral reason was advanced for the strike, the reason advanced is itself reasonable, and the record is devoid of any indication that the trial judge considered the relevant circumstances surrounding the strike in concluding that it was motivated by improper purposes, we must conclude that the trial judge failed to adequately engage in the "genuineness inquiry" mandated by Melbourne.

Jones, 787 So.2d at 156-57.
In our case, there is likewise nothing in the transcript that indicates the trial judge considered these factors, which would reveal whether the defense was attempting improperly to keep a female from serving on the jury. Consequently, we must find that the judge did not perform the requisite "genuineness" analysis.
Given that an all-female jury tried the case, the majority recognizes that Ms. Abadin's gender could not possibly support the trial court's finding that the explanation was not genuine and pretextual. The majority must then justify the trial court's ruling on the basis of Ms. Abadin's ethnicity. The majority states:
It is clear from [the exchange between the defense, the prosecution, and the trial court] that the State's objection to defense counsel's challenge to this juror *984 was based upon both her gender and ethnicity; the trial court understood that the objection was based upon both of these factors; and the trial court's finding was made after consideration of both Ms. Abadin's gender and her ethnicity.
Maj. op. at 975-76. I respectfully disagree that a fair reading of the transcript supports the majority's conclusion.
When the defense attempted to strike Ms. Abadin, the prosecutor stated:
We'll ask for a raise [sic] neutral, gender neutral reason based on the fact that she a[sic] protected class, she's a woman.
The discussion which follows, quoted in the majority opinion, establishes that Ms. Abadin was from Kendall; that she had been on a jury before, "not only on civil but in criminal cases"; and that her nephew was an attorney. The defense even knew the nephew, Ray Abadin, whose son played basketball with defense counsel's son. Defense counsel then repeats that her prior jury experience, in both criminal and civil cases, made counsel uncomfortable. It is the judge who first mentions that Ms. Abadin is Hispanic and immediately thereafter denies the strike. The trial court may have understood that both gender and ethnicity were encompassed in the prosecutor's objection, but such an understanding requires a very generous interpretation of what transpired.
The problem with injecting ethnicity, when the objection was clearly gender, is that the defense is not given an opportunity to contradict such a contention.[1] The majority concludes that Ms. Abadin was the only Hispanic who sat on the jury which convicted Lidiano. The defense was not given an opportunity to establish that other Hispanics sat on the jury, as the defense thought the issue was gender. We cannot assume the ethnicity of jurors simply by looking at their names. Other jurors who sat were Ms. Oyakawa, Ms. Erban, Ms. Wong, Ms. Pinchinat, Ms. Arrington, with Ms. Hinojosa as the alternate juror. Besides the alternate, who could have ended up deliberating, I am not willing to concede that no one else was Hispanic.
Because the trial court did not provide us with a reason for its denial of the peremptory challenge, the majority seeks to provide it.[2] As previously cited, Rodriguez v. State, 753 So.2d 29 (Fla.2000), lists the relevant circumstances that the court is to consider in determining whether the explanation is pretextual. These include such factors as (1) the racial makeup of the venire; (2) prior strikes exercised against the same racial group; (3) a strike based on a reason equally applicable to an unchallenged venireperson; (4) or singling out the venireperson for special treatment. Id. at 40.
As to the first circumstance, we know it was an all-female jury and that there was at least one other Hispanic juror left on the jury, Ms. Hinojosa. Regarding the second factor, Ms. Abadin was the first peremptory strike that the defense had attempted to exercise. The defense did not attempt to strike any Hispanics afterwards. As to the fourth factor, there is no indication that the defense singled out Ms. *985 Abadin for special treatment. The majority thus relies on the defense giving reasons equally applicable to an unchallenged venireperson  Ms. Wong.
The majority concludes that Ms. Wong had a similar background to Ms. Abadin. Ms. Wong, however, had never served on a criminal jury before, whereas Ms. Abadin had. The fact that Ms. Wong had served on a civil jury may not be as important to the defense, given that this was a criminal trial. Additionally, there is nothing to indicate that defense counsel knew Ms. Wong's son and daughter, who were lawyers. Ms. Wong's daughter worked in Washington, D.C., in a pension benefits guarantee fund, and her son worked in New York. In contrast, attorney Ray Abadin practices in Miami-Dade County, and juror Abadin admitted that she was close to him. More importantly, defense counsel even knew attorney Abadin, as their sons played basketball together. Thus, there were important differences between Ms. Wong and Ms. Abadin as jurors. I cannot, therefore, agree that the strike was based on a reason "equally applicable" to an unchallenged venireperson. Rodriguez, 753 So.2d at 40.
Accordingly, the record in this case establishes that the trial judge erred in refusing to allow the defense to exercise a peremptory challenge to excuse Ms. Abadin. I would therefore reverse and remand for a new trial.

II. MOTIONS FOR MISTRIAL
I cannot agree that the trial court properly denied Lidiano's four motions for mistrials after the State repeatedly introduced Detective Elosegui's testimony, which led the jury to the unavoidable conclusion that Yoraidyl Rodriguez, a non-testifying witness, had given him evidence of Lidiano's guilt. The testimony constituted hearsay evidence and improperly bolstered the testimony of another testifying witness, Lorenzo Retureta.
Twenty-five years ago, in Postell v. State, 398 So.2d 851 (Fla. 3d DCA 1981), we held that where "the inescapable inference from the testimony is that a non-testifying witness has furnished the police with evidence of the defendant's guilt, the testimony is hearsay, and the defendant's right of confrontation is defeated, notwithstanding that the actual statements made by the non-testifying witness are not repeated." Id. at 854. Postell was convicted of armed robbery. Id. at 852. During trial, the State introduced, over the defense's objection, evidence that a non-testifying witness saw what occurred, spoke to the officer within minutes of the crime being committed, and based upon what she told the police, they responded to defendant's apartment and arrested him. Id. As recognized in Postell and ever since then, Florida courts consistently have condemned testimony which recounts the actual statement made by the out-of-court declarant implicating the accused. See, e.g., Keen v. State, 775 So.2d 263, 271-73 (Fla.2000); State v. Baird, 572 So.2d 904 (Fla.1990); Collins v. State, 65 So.2d 61, 66-67 (Fla.1953); Roman v. State, 937 So.2d 235 (Fla. 3d DCA 2006); Tumblin v. State, 747 So.2d 442, 444 (Fla. 4th DCA 1999) (trial court improperly allowed officer to testify that he arrested the defendant after talking with a non-testifying eye-witness); Trotman v. State, 652 So.2d 506 (Fla. 3d DCA 1995) (trial court erred in permitting officer to testify that he went to the location of crime and arrested defendant after speaking to unidentified, non-testifying witness). In fact, the Postell decision has been cited favorably by other appellate courts in Florida at least 63 times, including by the Florida Supreme Court.
*986 To disregard the clear mandate of these cases, the majority recognizes that Detective Elosegui's testimony constituted inadmissible hearsay. The detective stated, "I got the story from the victim and I called the second victim which was consistent with the story of the victim. . . ." To justify its affirmance, the majority weighs this evidence and finds it harmless. I cannot agree.
In its opening statement, defense counsel explained that Retureta and Lidiano both came from a small town in Cuba called Guines. Lidiano's sister and his brother-in-law also came from Guines. They all knew each other in Cuba. The restaurant was called Los Guineros catering to émigrés from Guines. Thus, identity was not an issue. The defense contended that, other than Retureta, there would be no other witnesses testifying against Lidiano. In fact, defense counsel stated: "There's nothing to reenforce [sic] or corroborate the testimony of Mr. Retureta." This, of course, was undermined severely by the inadmissible hearsay. Defense counsel did not foresee that Ms. Rodriguez would be testifying through Detective Elosegui's mouth.
The majority then states that Detective Elosegui made clear that only Mr. Retureta was able to provide him with information as to the shooter's identity. The record does not support that conclusion. In fact, I believe the contrary is more accurate:
Q [by prosecutor]: After you speak [sic] to both of these victims, what do you do?
. . .
A. After I obtained a story, you know, of the sequences of events as they happened from them, what I did is myself and Mr. Retureta went to a location, a car wash, within the area to try to locate the defendant.
Thus, the majority's long recitation of how the fact that this nontestifying victim's statement, which was "consistent with Retureta's story," did not really identify Lidiano as the shooter, is simply not supported by the record. Because the defense never disputed that Lidiano was a frequent customer at the restaurant, the clear implication of Rodriguez's consistent statement was that she agreed Robertico was the assailant, otherwise her statement would not have been consistent. Therefore, I cannot agree with the majority's conclusion that the trial court did not abuse its discretion in denying the motion for mistrial.
Our story, however, does not end there. A few minutes later, the detective testified that Lidiano was told that there were witnesses against him. This second motion for mistrial was again denied, although the trial court sustained the objection. Later, on redirect examination, the detective again testified that he told Lidiano "that witnesses had seen him at the location." This third motion for mistrial was denied.[3]
The prosecutor, however, was not satisfied with injecting this inadmissible hearsay into the trial only three times. In case any juror had missed the inadmissible hearsay, the prosecution concluded the testimony of Detective Elosegui with the following exchange:
[PROSECUTOR]: Let's narrow it down what victims did you speak to?
[DEFENSE COUNSEL]: Objection.
[PROSECUTOR]: The alleged victim.
[DEFENSE COUNSEL]:  and who he actually talked to with names.

*987 THE COURT: Overruled. Don't tell us what they said.

Q. [BY PROSECUTOR]: Who did you speak to at the bar?
A. Retureta and then Rodriguez.
Q. Ms. Rodriguez?
A. Telephonically.
Q. Is that the waitress?
A. Yes.
Q. So you did gather information from somebody other than Mr. Retureta, correct?
A. Yes.
Q. Regarding the incident?
[DEFENSE COUNSEL]: Objection. This is all back door hearsay, summaries and I move to strike this information.
THE COURT: Overruled. Denied.
[BY PROSECUTOR]: Was Ms. Rodriguez' statement consistent with Mr. Retureta?

THE COURT: Sustained. Don't answer that.
[DEFENSE COUNSEL]: Objection. Move for a mistrial.
THE COURT: Denied.
(emphasis supplied). It is difficult to fathom a prosecutor asking that question in good faith. In fact, it was a blatant display of prosecutorial misconduct. Three times previously the inadmissible hearsay had been injected into the trial. Three times previously the judge had sustained the objection. Three times previously the defendant had moved for a mistrial. Instead of condemning such conduct, the majority condones such behavior by stating that the detective never answered the question and, in any case, Ms. Rodriguez did not provide the shooter's identity.
This case is no different from Denmark v. State, 927 So.2d 1079 (Fla. 2d DCA 2006). In Denmark, the appellant argued that the trial court erred in allowing the State to present evidence of his prior juvenile offenses. Id. at 1081. Although the trial court sustained Denmark's objections, it denied his mistrial motions. Id. The Second District concluded that "[a]lthough no curative instruction was requested or given, any such instruction would not have cured the error." Id. (citing Groebner v. State, 342 So.2d 94, 95 (Fla. 3d DCA 1977) (holding improper remarks of prosecutor were of such character that neither objection nor curative instruction could entirely destroy their sinister influence; mistrial motion should have been granted) and Fischman v. Suen, 672 So.2d 644, 646 (Fla. 4th DCA 1996) (discussing futility of curative instruction in context of evidence of other illegal conduct)). Not only did the court reverse Denmark's conviction, it admonished the prosecutor thusly:
We recognize that counsel must advocate vigorously for his or her client. We are also aware that, at trial, counsel may try to "push the envelope" on evidentiary issues. The obligation to represent a client zealously, however, is not unbounded. Counsel is an officer of the court and must comport himself or herself with the trial court's rulings. We are compelled to express our concern with the prosecutor's unwillingness to follow the trial court's rulings.
Denmark, 927 So.2d at 1081 n. 1. I can only conclude that, unlike the Second District, the majority actually condones such behavior and would encourage prosecutors to "push the envelope" in the future.
This was a close case. There was no physical evidence to tie Lidiano to the alleged crime. Although there were waitresses and about a dozen customers at the restaurant, Retureta was the only eyewitness. The State's entire case hinged on the credibility of Lorenzo Retureta. By his own admission, Retureta was a liar. He lied the night of the incident to the police that responded to the scene by telling them he did not know the assailant but *988 would be able to recognize him. He lied five days later to Detective Elosegui by telling him that he only knew the assailant as Robertico. It was not until February 3rd, five weeks after the incident, that Retureta finally told Detective Elosegui that he knew Lidiano's full name, as well as his sister and brother-in-law.
Additionally, Retureta's story was inherently incredible. Lidiano supposedly attacked him with a gun, shooting at him repeatedly, and Retureta was able to fend him off by throwing bottles at Lidiano. The physical evidence did not corroborate that so many shots were fired.
Although the State presented Retureta as the only eyewitness to the alleged crime, through the repeated references to the statement of Rodriguez, two people instead of one rendered testimony against Lidiano. This constituted improper bolstering condemned in Sankar v. State, 928 So.2d 1265 (Fla. 4th DCA 2006), which reversed a conviction after an officer testified, over defense objection, that one witness' statement was "consistent with what took place." The court in Sankar reasoned that such a statement may not come in at trial, especially not through the testimony of the police officer, because it tended to bolster the credibility of the witness. Id. at 1267. Likewise, when Detective Elosegui testified that Rodriguez gave a statement consistent with Retureta's, the detective not only bolstered Retureta's testimony, but the detective also gave his opinion that the statements of both witnesses were consistent. See Peterson v. State, 874 So.2d 14 (Fla. 4th DCA 2004) (holding that detective's testimony that the victim identified appellant as the shooter was inadmissible hearsay and particularly prejudicial because it was offered through a police officer).
Justice Scalia recently wrote in Davis v. Washington, ___ U.S. ___, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006):
The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."
The majority does not quarrel with the statements of Rodriguez being testimonial. It simply concludes that the trial court did not abuse its discretion in denying the four motions for mistrial based on the same inadmissible hearsay. The majority thus allows a conviction to stand where a one-witness case was basically converted into a two-witness case. Undeniably, the State was allowed to bolster Retureta's account of what happened with the testimony of Yoraidyl Rodriguez, who never took the stand. As pointed out by the Florida Supreme Court, in Keen v. State, 775 So.2d 263 (Fla.2000):
This Court has repeatedly admonished that the admission of this type of evidence is inherently prejudicial. . . . Here, the improper evidence was injected into the proceedings by the State's witness, an experienced detective, selectively volunteering inappropriate matters to a jury.
Id. at 275. Detective Elosegui testified that he had been a detective for almost ten years. See also Wilding v. State, 674 So.2d 114 (Fla.1996), receded from on other grounds, Devoney v. State, 717 So.2d 501 (Fla.1998); Conley v. State, 620 So.2d 180, 182 (Fla.1993); and State v. Baird, 572 So.2d 904 (Fla.1990). In my view, the injection of inadmissible hearsay on four different occasions made through an experienced *989 detective in this case substantially affected Lidiano's right to a fair trial.

III. CONCLUSION
In sum, I disagree with the majority on both issues raised by Lidiano on appeal. Consequently, I would reverse Lidiano's judgments of conviction and sentences and remand the case to the trial court with directions that he be granted a new trial.
NOTES
[1] The majority opinion criticizes my dissent on this point because this argument was not raised by appellant. As the Initial Brief was drafted expecting the issue on appeal to be gender, not ethnicity, appellant's counsel can hardly be faulted for not anticipating the majority's reasoning.
[2] The opinion chides Lidiano for not anticipating its reasoning and providing this Court with the juror questionnaires. Lidiano's Initial Brief assumed, quite justifiably in my view, that gender would be the issue on this appeal, not ethnicity. As the entire jury was female, the juror questionnaires would have added nothing to our analysis.
[3] Even though these second and third motions for mistrial were denied, the majority again chides defense counsel for not requesting a sidebar ostensibly to establish that the statements were hearsay. See Maj. op. at p. 979.