ATTORNEY FOR APPELLANT
P. Stephen Miller
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 02S03-0512-CR-616

MARSHALL HIGHLER,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Allen Superior Court, No. 02D04-0310-FB-187
The Honorable John F. Surbeck, Jr., Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 02A03-0505-CR-203

**October 4, 2006**

**Boehm, Justice.**

We hold that the use of a peremptory challenge to strike a juror because of the juror's race, gender or religious affiliation violates the juror's right to equal protection of the laws. The juror's affiliation is to be distinguished from religious beliefs that prevent the juror from following the law. The juror's occupation, to the extent it may indicate a predisposition and is not a pretext, is a permissible ground for a peremptory strike.

**Facts and Procedural History**

Marshall A. Highler, an African American, was charged with rape as a Class B felony. "Juror 92" was the only African American on the venire as a prospective juror. Juror 92 stated on his questionnaire that he was a pastor of the 1st Redeemed by the Blood Church. In a section entitled "Remarks," Juror 92 added

> My problem is I have sat in on some cases in Allen Co. courtroom, and have not been pleased with the way many cases have been handled. In more than one case it seems as if there are at least two sets of law books, poor and rich, and black and white. I have seen cases decided before court ever starts, and to be real honest I prefer not to be part of your process.

Explaining these remarks in voir dire, Juror 92 expressed his view that "sometimes the system seemingly doesn't give the Defendant a fair opportunity" and "if you can't afford proper legal representation [] you don't always get an opportunity that money affords people." The State exercised a peremptory challenge to Juror 92, and Highler objected that the challenge was based on race. The State responded that Juror 92 was a pastor and pastors were inclined to be lenient and forgiving. The trial court found that explanation sufficient and sustained the State's strike of Juror 92.

During a two-day jury trial, commencing on August 17, 2004, Highler admitted to having sexual intercourse with his accuser but claimed that it was consensual. Midway through the trial, Highler objected to the admission of a tape of a 9-1-1 call placed by the accuser and a friend of the accuser on the ground that the tape's prejudicial nature substantially outweighed its probative value. The trial court admitted the tape after an admonishment that the jury should accept the tape not "for the truth of the statements made but rather simply that the statements were made." Highler was found guilty and sentenced to ten years imprisonment.

Highler appealed his conviction on the ground that the State's peremptory strike of Juror 92 violated the Federal Constitution because it was based on race and religion. Highler also contended that the venire was not a fair cross-section of the community and that the 9-1-1 tape was inadmissible. The Court of Appeals affirmed. Highler v. State, 834 N.E.2d 182, 199 (Ind. Ct. App. 2005). We granted transfer. Highler v. State, 841 N.E.2d 191 (Ind. 2005).

## I. Peremptory Strikes Based on Race

Peremptory challenges based on race violate the juror's Fourteenth Amendment right to equal protection of the law and require a retrial. McCormick v. State, 803 N.E.2d 1108, 1110 (Ind. 2004); Wright v. State, 690 N.E.2d 1098, 1104 (Ind. 1997). A defendant's claim of racial discrimination in a peremptory strike triggers a three-step inquiry. See Bradley v. State, 649 N.E.2d 100, 105 (Ind. 1995) (citing Batson v. Kentucky, 476 U.S. 79, 96-98 (1986)). First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Batson, 476 U.S. at 96-97. To make a prima facie case of purposeful discrimination, the defendant must show that the excused juror was a member of a cognizable racial group and present an inference that the juror was excluded because of his or her race. McCants v. State, 686 N.E.2d 1281, 1284 (Ind. 1997).

Juror 92 was the only African American in the venire for Highler's trial. The removal of some African American jurors by the use of peremptory challenges does not, by itself, raise an inference of racial discrimination. McCormick, 803 N.E.2d at 1111. However, the removal of "the only . . . African American juror that could have served on the petit jury" does "raise an inference that the juror was excluded on the basis of race." Id.; accord Ashabraner v. Bowers, 753 N.E.2d 662, 667 (Ind. 2001) (noting that the peremptory removal of the "only black member of the panel" standing alone "establishes a prima facie case" of discrimination); McCants, 686 N.E.2d at 1284.

Once the defendant presents a prima facie case of racial discrimination in the use of a peremptory challenge, the burden shifts to the State to present a race-neutral explanation for striking the juror. Batson, 476 U.S. at 97-98. A race-neutral explanation means "an explanation based on something other than the race of the juror." Hernandez v. New York, 500 U.S. 352, 360 (1991) (plurality). Although the prosecutor must present a comprehensible reason and offer more that a mere denial of improper motive, "the second step of this process does not demand an explanation that is persuasive, or even plausible." Purkett v. Elem, 514 U.S. 765, 767-768 (1995) (per curiam). If the reason is not inherently discriminatory, it passes the second step. Id. "[T]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason will be deemed race neutral." Id. "[A]

3

prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons" proffered. Miller-El v. Dretke, 545 U.S. 231, 236 (2005).

In this case, when asked to set forth her reasons for excluding Juror 92, the prosecutor stated:

> First of all Your Honor, in his profession he's a Pastor and I never take any Pastors, Ministers, Reverends, Priests on my jury panels just because they're more apt for forgiveness. But in addition to that Your Honor, I was highly disturbed by his questionnaire, . . . I already marked off that I was going to strike him as a juror before he even came to this courtroom, before I knew anything about his race . . . . Based on the answer to [his questionnaire] indicating his feelings about cases and the way they're handled in Allen County . . . the State is highly concerned about his ability to be fair and impartial to the State. . . . I don't think it's sufficient to strike for cause but I think I can use my peremptory challenge and I do have that concern, not being any type of race issue.

Thus, the State's reasons for challenging Juror 92 were: (1) he was a pastor, and thus, more apt to be forgiving and (2) statements in his questionnaire and during voir dire raised questions about his ability "to be fair and impartial to the State."

The prosecutor's reasons for striking Juror 92 were on their face race-neutral and required the trial court to proceed to the third step and determine whether the defendant had established purposeful discrimination. Miller-El, 545 U.S. at 236; Batson, 476 U.S. at 98; McCormick, 803 N.E.2d at 1110. This third step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, 514 U.S. at 768.

Highler argues that Juror 92's distrust of the criminal justice system and concern for its fairness to poor defendants did not imply that Juror 92 would have been partial to Highler. He also contends that excluding Juror 92 because of his views further destroys the "confidence of the community in the system, because it fails to recognize the imperfections within the system and excludes those who discern the difficulties." Highler contends that Juror 92's statements were not unlike the remarks of the juror in Brown v. State, 733 So. 2d 1128 (Fla. Dist. Ct. App. 1999), where the court found a Batson violation. In Brown, the State used a peremptory challenge to strike an African American juror who stated in voir dire that he believed some police arrest people in a prejudicial manner. Id. at 1129. But that view was also shared by "a white ju-

4

ror with a beard," "[a]nother juror" and "a white woman," all of whom were not challenged. Id. at 1131.

Where the same opinion is expressed by others, but only a minority juror is struck, pretext may be inferred. In this case, however, the trial court found the State's reason to be "race neutral," observing that "the gentleman clearly has an attitude about all this, that tends not to be favorable to the State." Juror 92 was the only juror who expressed similar views, and was the only pastor among the venire. We agree with the Supreme Court of Missouri's caution that "trial courts should . . . consider strikes based on occupation carefully, assessing them for pretext by looking at whether the occupation and the claimed traits relate to the particular case or juror, [and] whether similarly situated jurors are treated differently." State v. Edwards, 116 S.W.3d 511, 528 (Mo. 2003). The trial court's conclusion that the prosecutor's reasons were not pretextual is essentially a finding of fact that turns substantially on credibility. It is therefore accorded great deference. Batson, 476 U.S. at 98 n.21. We cannot say it was clearly erroneous. See McCants, 686 N.E.2d at 1284; Kent v. State, 675 N.E.2d 332, 340 (Ind. 1996).

## II.    Peremptory Strikes Based on Religion or Occupation

Higher argues that the State's other proffered "race-neutral" reason for its peremptory challenge of Juror 92—that the juror was a pastor and therefore more forgiving—amounts to a strike based on the juror's religion and therefore violates the juror's rights under the equal protection clause of the Fourteenth Amendment. The State's explanation of its justification for striking Juror 92 was: "in [Juror 92's] profession he's a Pastor and I never take any Pastors, Ministers, Reverends, [or] Priests on my jury panels." The Court of Appeals concluded that, "the State did not strike Juror 92 because he held a particular religious belief or affiliation. Rather, the prosecutor struck the juror in question, in part, because he is a pastor." Highler, 834 N.E.2d at 194. Thus, the Court of Appeals framed this issue as "whether it is proper to use a peremptory challenge to exclude members—in this case leaders—of a religious group or those perceived as having religious affiliations from the jury, without regard to the particular group or affiliation." Id.

The Court of Appeals thoroughly explored the use of a peremptory challenge based on religious affiliation or religious leadership and concluded "that the equal protection clause of the

Fourteenth Amendment to the Federal Constitution prohibits the exercise of a peremptory challenge to excuse a venire person because of his or her religious affiliation." Highler, 834 N.E.2d at 197. The Court of Appeals explained that, "[a]lthough one's religious *beliefs* may render a prospective juror unsuitable for service in a particular case, one's religious *affiliation*, like one's race or gender, bears no relation to that person's ability to serve as a juror." Id. (emphasis in original) (citing Georgia v. McCollum, 505 U.S. 42, 59 (1992) ("In our heterogenous society policy as well as constitutional considerations militate against the divisive assumption—as a per se rule—that justice in a court of law may turn upon the pigmentation of skin, the accident of birth, or the choice of religion.")); see also State v. Clark, 990 P.2d 793, 803 (N.M. 1999) (finding that a juror was properly struck because his religious beliefs prevented him from imposing the death penalty).[1] Although the issue is not yet resolved by the Supreme Court of the United States, we think the Court of Appeals was correct in concluding that religious affiliation, like race and gender, is an impermissible basis for striking a prospective juror.[2]

Despite its view that a strike based on religious affiliation was impermissible, the Court of Appeals affirmed Highler's conviction because it found that the prosecutor's primary motivation in striking Juror 92 was Juror 92's concern for the criminal justice system. As we held in

---

[1] We note that Indiana Jury Rule 5 was amended effective January 1, 2007 to add the following: "Upon timely advance request from the prospective juror, the court may excuse from reporting for jury service any person whose bona fide religious conviction and affiliation with a religion prevents the prospective juror from performing jury service."

[2] This conclusion is consistent with the majority of courts that have addressed this issue after J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 146 (1994), which held gender based peremptory strikes subject to a Batson analysis. See United States v. Somerstein, 959 F. Supp. 592, 595 (E.D.N.Y. 1997) (holding that Batson applies to religion-based challenges); State v. Purcell, 18 P.3d 113, 120 (Ariz. Ct. App. 2001) (holding that Batson encompasses peremptory strikes grounded upon religious affiliation or membership); State v. Hodge, 726 A.2d 531, 552-54 (Conn. 1999) (holding that Batson extends to religion, but "to the extent that the state's attorney had excused [a juror for] certain views that could impair his ability to decide the case" rather than simply "religious affiliation," the peremptory challenge would stand); People v. Martin, 75 Cal. Rptr. 2d 147, 150-51 (Cal. Ct. App. 1998) (holding that Batson extends to religion-based challenges but that challenge on basis of juror's beliefs is legitimate); see also United States v. Stafford, 136 F.3d 1109, 1114 (7th Cir. 1998) (stating in dicta that use of peremptory challenge on basis of religious affiliation would be improper, and perhaps unconstitutional, whereas challenge on basis of religious belief that would interfere with performance as juror would be permissible). Contra Casarez v. State, 913 S.W.2d 468, 495-96 (Tex. Crim. App. 1995) (declining to extend Batson to religion-based challenges). Some state courts would forbid such challenges solely on state constitutional grounds. See, e.g., State v. Fuller, 812 A.2d 389, 396-97 (N.J. Super. Ct. App. Div. 2002) (noting that exclusion of jurors based on religious affiliation would violate the state constitution's equal protection clause, but holding that the exclusion at issue was not so based).

McCormick, if the prosecutor cites multiple reasons, some of which are permissible and others not, a Batson violation is established. 803 N.E.2d at 1112-13. We therefore disagree with that rationale of the Court of Appeals for affirming the trial court.

Although we agree with the Court of Appeals that strikes based on religious affiliation are impermissible, we believe that Judge Robb was correct in upholding the trial court's ruling because the State's justification for striking Juror 92 was not his religious affiliation, but his occupation. Id. at 99 (Robb, J., concurring). As a general proposition, striking a juror because of the juror's occupation is not unconstitutional. See United States v. Colon, No. 00-3744, 2002 U.S. App. LEXIS 3350, at *5 (3d Cir. Feb. 26, 2002) (finding constitutional in a cocaine distribution case strike of prospective juror who worked for Department of Human Services and had client mothers who were "on the verge of losing their kids because of drugs and alcohol"); Looney v. Davis, 721 So. 2d 152, 166 (Ala. 1998) (Employment is accepted as a "legitimate reason" for peremptory strikes where it "under the circumstances of the case, might make the potential jurors sympathetic to, or able to more easily identify with a particular party." (quoting Olsen v. Rich, 657 So. 2d 875, 879 (Ala. 1995))). Specifically, peremptorily striking religious leaders from juries because they may be sympathetic to defendants generally has been upheld as constitutional. See McKinnon v. State, 547 So. 2d 1254, 1257 (Fla. Dist. Ct. App. 1989) (affirming excusal of African American, evangelic minister based on the prosecutor's policy to excuse people in the religious profession because they are overly sympathetic); King v. State, 539 S.E.2d 783, 795 (Ga. 2000) (finding permissible blanket strike of ministers from jury because they are more apt to forgive people).

Finally, we have addressed the foregoing issues to give guidance to trial courts because the Court of Appeals has addressed them and we believe they are likely to recur. However, Highler's challenge to the peremptory strike, whether characterized as based on occupation or religion, was waived because he did not object on either ground in the trial court. Highler's objection to the State's strike of Juror 92 was based solely on a claim of unconstitutional racial discrimination. By failing to identify his objection to the peremptory strike on religious or occupational grounds, Highler failed to preserve these questions for appeal.

7

### III.  Other Constitutional and Evidentiary Issues

Highler raises two other issues.  First, he argues that he was denied a trial by a jury of his peers in violation of the Sixth and Fourteenth Amendments to the United States Constitution and in violation of Indiana Code section 33-28-4-3 (2004) because there was only one African American on the panel of 47 and according to the 2000 U.S. census 17.4 percent of Allen County was African American.  The Court of Appeals correctly held that a statistical anomaly in a single venire presents no issue.  Highler, 834 N.E.2d at 189 (citing Azania v. State, 778 N.E.2d 1253, 1257 (Ind. 2002)).

Highler also contends that a 9-1-1 tape was erroneously admitted into evidence because its prejudicial effect outweighed any relevance.  Highler made no claim that the tape's admission infringed his confrontation rights under Crawford v. Washington, 541 U.S. 36 (2004).  See also Davis v. Washington, 126 S. Ct. 2266, 2269 (2006) (statements by an alleged victim to a 9-1-1 operator that name her attacker were not "testimonial" because her "primary purpose was to en-able police assistance to meet an ongoing emergency").  We summarily affirm the holding of the Court of Appeals on these issues.  Indiana Appellate Rule 58(A)(2).

### Conclusion

The judgment of the trial court is affirmed.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ., concur.