## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 25 2017, 9:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

Kevin Wild
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

Nathaniel Wilson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

May 25, 2017

Court of Appeals Case No.
49A04-1609-CR-1984

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-1501-F1-2920

**Bradford, Judge.**

# Case Summary

[1] On May 24, 2015, following a two-day jury trial, Appellant-Defendant Nathaniel Wilson was found guilty of numerous counts of Level 1 felony child molesting and one count of Level 1 felony attempted child molesting. He was thereafter sentenced to an aggregate forty-year sentence.

[2] In challenging his convictions on appeal, Wilson contends that the trial court denied him the right to an impartial jury. Concluding otherwise, we affirm.

# Facts and Procedural History

[3] At some point during 2014, Wilson engaged in a relationship with Kathleen Robinson. The relationship progressed to the point that Wilson moved in with Kathleen and her daughter, C.R., in August of 2014. During the time Wilson lived with Kathleen and C.R., Wilson worked regular hours while Kathleen worked longer, more irregular hours. Wilson was often home alone with C.R. while her mother worked. In January of 2015, C.R. disclosed to her mother and to friends that Wilson had touched her sexually and engaged in sexual activity with her from the time he moved in with she and her mom in August of 2014 until January 17, 2015.

[4] On January 27, 2015, Appellee-Plaintiff the State of Indiana ("the State") charged Wilson with six counts of Level 1 felony child molesting and one count of Level 1 felony attempted child molesting. Wilson's case went to trial on May 23, 2015. During the voir dire process, an initial jury panel of thirty-one

individuals was brought into the court room.  Two panels of fourteen prospective jurors each participated in voir dire, from which six were chosen as jurors.

[5]    The remaining three prospective jurors from the original panel were then joined by five other prospective jurors, all of whom had been excused from a different court earlier that morning.[1]  Wilson objected to the addition of the five prospective jurors to the jury pool from which the jurors hearing his case would be chosen.  The trial court noted Wilson's objection before continuing the voir dire process.  From those eight prospective jurors, five jurors were chosen.

[6]    Additional prospective jurors entered the courtroom, all of whom had also been excused from a different court earlier that morning.[2]  Wilson again objected to the addition of these prospective jurors to the jury pool from which the jurors hearing his case would be chosen.  The trial court again noted Wilson's objection before continuing the voir dire process.  One juror and two alternate jurors were chosen from this group.

[7]    Once the jury had been selected, the parties proceeded with Wilson's trial.  The next day, on May 24, 2015, the jury found Wilson guilty as charged.  The trial

---

[1] The record indicates that the trial court did not re-administer the Jury Rule 13 oath to these five prospective jurors.

[2] The record indicates that the trial court did re-administer the Jury Rule 13 oath to these additional prospective jurors.

court subsequently imposed an aggregate executed forty-year sentence. This appeal follows.

# Discussion and Decision

[8] In challenging his convictions on appeal, Wilson contends that the trial court denied him the right to an impartial jury. For its part, the State argues that Wilson was not denied the right to an impartial jury.

## I. Waiver and Fundamental Error

[9] During voir dire, the trial court administered the oath set forth in Indiana Jury Rule 13[3] to the original jury pool members. After the parties failed to fill the jury with members of the original jury pool, two groups of prospective jurors joined the jury pool from which Wilson's jury was selected after having been dismissed from serving on the jury in other courts. The trial court re-administered the Jury Rule 13 oath to the members of the second group of additional prospective jurors, but failed to re-administer the Jury Rule 13 oath to the members of the first group ("the challenged jurors").

---

[3] Jury Rule 13 provides as follows:

> The jury panel consists of those prospective jurors who answered their summons by reporting for jury service. The judge shall administer the following to the prospective jurors of the jury panel: "Do you swear or affirm that you will honestly answer any question asked of you during jury selection?"

[10] Wilson argues that the trial court erred by failing to give the challenged jurors the oath set forth in Jury Rule 13. Wilson asserts that "[a] crucial aspect of [voir dire] is to assure that prospective jurors are being candid and forthright when responding to questions from the judge or attorneys." Appellant's Br. p. 11. As such, he claims that given the trial court's failure to give the challenged jurors the Jury Rule 13 oath, there were "no assurance at all that one-fourth of his jury was even honest in responding to questions asked by counsel on voir dire because they were never sworn as required by Jury Rule 13." Appellant's Br. p. 15.

[11] Review of the record, however, demonstrates that while Wilson's counsel objected to the challenged jurors below, the basis for counsel's objection was not that the trial court did not give them the oath required by Jury Rule 13, but rather that the challenged jurors had already been struck from the jury in other, unrelated cases, and because they had not been present for the voir dire proceedings in their entirety, the challenged jurors had not been present for the questioning of other prospective jurors which had led some of the others to determine that they could not be fair or impartial. Specifically, defense counsel made the following objection:

> [Defense Counsel]: Just for the record, Judge, I just want to make an objection to the new jurors that were brought in. My concern is, number one, they were obviously let go from another jury by one side or other for some reason but secondly, you know, they haven't been able to hear all of the discussions that we've been having. We're starting new with those six or how many ever it is and you know, they -- they didn't get to hear the

discussions that we had with all the other jurors which obviously led to a lot of people coming out with different biases and -- and reasons that they couldn't be fair so I just wanted to make that objection for the record.

[Trial Court]: Okay. That is noted.

Tr. Vol. II, p. 106. Defense counsel repeated this objection when the second group of additional jurors were brought in. The trial court again noted defense counsel's objection before continuing the voir dire process.

It is well-settled that "[a] party may not object on one ground at trial and raise a different ground on appeal." *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002). When a defendant fails to object to a claimed error at trial, "he must show fundamental error to prevail" on appeal. *State v. Eubanks*, 729 N.E.2d 201, 205-06 (Ind. Ct. App. 2000) (citing *Moore v. State*, 673 N.E.2d 776, 780 (Ind. Ct. App. 1996)). Fundamental error requires a defendant to show greater prejudice than reversible error because no objection has been made. *Id*. at 205.

> To demonstrate fundamental error, the defendant must show that the error was so prejudicial that he "could not possibly have had a fair trial" and that the error "pervaded the climate of the proceedings below, viewed as a whole, depriving the defendant of any realistic opportunity for a fair hearing." [*Lacey v. State*, 670 N.E.2d 1299, 1302 (Ind. Ct. App. 1991)] (citations omitted).

*Id*. "A fundamental error is a substantial, blatant violation of basic principles of due process rendering the trial unfair to the defendant." *Id*. at 206 (citing *Baird*

*v. State*, 688 N.E.2d 911, 917 (Ind. 1997)). The Indiana Supreme Court has explained the limited applicability of the fundamental error doctrine, stating:

> It is true that we have acknowledged an exception to the waiver rule in circumstances where the trial court committed "fundamental error." But we view this exception as an extremely narrow one, available only "when the record reveals clearly blatant violations of basic and elementary principles [of due process], and the harm or potential for harm [can]not be denied." *Warriner v. State*, 435 N.E.2d 562, 563 (Ind. 1982).

*Canaan v. State*, 683 N.E.2d 227, 235 n.6 (Ind. 1997).

[14] Again, review of the record reveals that Wilson's defense counsel did not object to the inclusion of the challenged jurors in the jury pool for Wilson's case on the basis that the trial court erred by failing to give the Jury Rule 13 oath to the challenged jurors. Wilson, therefore, must demonstrate that the trial court's alleged error amounted to fundamental error.

## II. The Right to an Impartial Jury

[15] The Federal and Indiana Constitutions guarantee the right to an impartial jury. *Ramirez v. State*, 7 N.E.3d 933, 936 (Ind. 2014). But selecting impartial juries depends upon the parties' discernment and the trial court's discretion to select a panel of objective and unbiased jurors "who will conscientiously apply the law and find the facts." *Wainwright v. Witt*, 469 U.S. 412, 423, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Removing prospective jurors—whether peremptorily or for cause—who cannot perform these tasks is the mechanism parties and trial courts use to achieve an impartial jury. *Emmons v. State*, 492 N.E.2d 303, 305 (Ind. 1986).

Peremptory challenges are "an important auxiliary tool" for that purpose. [*Whiting v. State*, 969 N.E.2d 24, 29 (Ind. 2012)]. They give parties the nearly unqualified right to remove any prospective juror they wish—restricted only by the parties' finite allotment of challenges and the constitutional ban on racial, gender, and religious discrimination. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (race); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 140-43, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (gender); *Highler v. State*, 854 N.E.2d 823, 829 (Ind. 2006) (religion). "Unlike challenges for cause, the peremptory is often exercised on 'hunches' and impressions having to do, perhaps, with a prospective juror's habits, associations, or 'bare looks.'" *Merritt v. State*, 488 N.E.2d 340, 341 (Ind. 1986). These "hunches" are difficult if not impossible to explain to a trial court or opposing counsel—which is why parties are "generally not required to explain [their] reasons for exercising a peremptory challenge, and the exercise is not subject to the trial court's control." *Price v. State*, 725 N.E.2d 82, 86 (Ind. 2000). "Our belief that experienced lawyers will often correctly intuit which jurors are likely to be the least sympathetic, and our understanding that the lawyer will often be unable to explain the intuition, are the very reason we cherish the peremptory challenge." *J.E.B.*, 511 U.S. at 148, 114 S.Ct. 1419 (O'Connor, J., concurring).

For-cause motions, by contrast, are available to exclude any prospective juror whose "views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath'" and thus violate the defendant's Sixth Amendment rights. *Witt*, 469 U.S. at 423-24, 105 S.Ct. 844 (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). Similarly, Indiana Code section 35-37-1-5 (2008) and Indiana Jury Rule 17 list many additional bases for removing a prospective juror for cause. *Whiting*, 969 N.E.2d at 29. A juror who qualifies for removal under these constitutional or statutory criteria may be removed as an "incompetent juror," while a juror "who is not removable for

cause but whom the party wishes to strike" peremptorily is termed "objectionable." *Id.* at 30 n. 7. Unlike peremptory strikes, strikes for cause require trial court approval, so parties regularly seek appellate review of unsuccessful for-cause motions. This, in turn, requires them to satisfy the exhaustion rule[.]

*Oswalt v. State*, 19 N.E.3d 241, 245-46 (Ind. 2014).

[16] "The exhaustion rule requires parties to peremptorily remove jurors whom the trial court refuses to strike for cause or show that they 'had already exhausted [their] allotment of peremptories' at the time they request for-cause removal." *Id*. at 246 (quoting *Whiting*, 969 N.E.2d at 30).

And "even where a defendant preserves a claim by striking the challenged juror peremptorily," an appellate court will find reversible error "only where the defendant eventually exhausts all peremptories *and* is forced to accept either an incompetent or an objectionable juror." [*Whiting*, 969 N.E.2d at 30]. The rule promotes judicial economy: parties should use the tools at their disposal to cure error and avoid significant costs that will accrue to the judiciary, the parties, and the citizen jurors. *Id*. (citing *Merritt*, 765 N.E.2d at 1236-37). Failure to comply with the exhaustion rule results in procedural default.

*Id*. (emphasis in original).

[17] While we believe that the trial court erred by failing to re-administer the Jury Rule 13 oath to the challenged jurors, we conclude that Wilson has failed to establish that such error amounted to fundamental error. First, the record indicates that Wilson, through counsel, was given the opportunity to and in fact did question the challenged jurors during the voir dire process. Second, Wilson

has failed to prove on appeal that he satisfied the exhaustion rule by exhausting his peremptory challenges or establish that an "objectionable" juror served on his jury. He neither identifies any particular juror who was objectionable nor explains why he wished to strike that juror; he simply states that "[h]is ability through counsel to determine the biases and prejudicial feelings and beliefs of prospective jurors, and for jurors themselves to recognize and acknowledge their own in their responses to questioning, have been irreparably damaged and his rights prejudiced." Appellant's Br. p. 16.

[18] In *Weisheit v. State*, the Indiana Supreme Court held that a defendant's conclusory assertion that he was forced to accept biased jurors "is not nearly enough" to make a showing of reversible error. 26 N.E.3d 3, 13 (Ind. 2015). In the instant matter, Wilson has presented only a conclusory assertion that he was forced to accept potentially biased jurors. Wilson has also failed to demonstrate that he suffered any prejudice as a result of the manner in which the trial court conducted voir dire proceedings. Given the facts of this case coupled with the Indiana Supreme Court's holding in *Weisheit*, we conclude that Wilson has failed to establish that he suffered a fundamental error during the voir dire proceedings. Accordingly, we affirm the judgment of the trial court.

[19] The judgment of the trial court is affirmed.

Mathias, J., and Altice, J., concur.