## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2019, 9:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Elton Maurice Funches, Jr., *Appellant-Defendant,* | September 30, 2019 |
| | Court of Appeals Case No. 19A-CR-138 |
| v. | Appeal from the Vanderburgh Circuit Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Kelli E. Fink, Magistrate |
| | Trial Court Cause No. 82C01-1802-F4-1310 |

**Crone, Judge.**

## Case Summary

Elton Maurice Funches, Jr., appeals his convictions for level 4 felony unlawful possession of a firearm by a serious violent felon and level 6 felony dealing in a synthetic drug. He argues that his rights under the Fourth Amendment to the United States Constitution, Article 1, Section 11 of the Indiana Constitution, and Indiana Code Section 35-33-5-2 were violated by the admission of evidence obtained pursuant to a search warrant that he alleges was unsupported by probable cause. He further argues that the trial court clearly erred in overruling his objection pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986), and concluding that the State's reason for its peremptory strike of the only African-American member of the jury pool was not a pretext for intentional discrimination. Concluding that none of his rights were violated and finding no error, we affirm.

## Facts and Procedural History

In February 2018, Vanderburgh County Sheriff's Department Detective Joshua Patterson and other police officers executed a search warrant at 1730 South Kerth Avenue in Evansville, a single-story house occupied and rented by Funches. The search warrant authorized law enforcement to search the premises and Funches' Chrysler 300 for evidence pertaining to the crime of possession or dealing in controlled substances, specifically synthetic cannabinoids. During the search of Funches' residence, officers discovered a Ruger revolver, a Glock semiautomatic handgun, a stack of currency totaling $806.00, and 1358.4 grams of a green leafy substance, which was identified as

synthetic cannabinoids. Some of the leafy substance was packaged in Ziploc baggies. When questioned during the search, Funches admitted that police would find the synthetic cannabinoids and a firearm in the residence and that he had traded the drugs for one of the firearms. He also admitted that he usually purchased two pounds of the drug at a time for $1000 a pound.

[3] The State charged Funches with level 4 felony unlawful possession of a firearm by a serious violent felon and level 6 felony dealing in a synthetic drug. Funches filed a motion to suppress the evidence obtained pursuant to the search warrant. Funches filed a memorandum in support of the motion arguing that the search warrant was unsupported by probable cause as required under the Fourth Amendment to the United States Constitution, Article 1, Section 11 of the Indiana Constitution, and Indiana Code Section 35-33-5-2. The trial court held a hearing on the motion, at which Funches submitted the affidavit for the search warrant, the search warrant, and the return on the search warrant. The trial court took the motion under advisement and subsequently denied it. During trial, Funches objected to the admission of the evidence obtained pursuant to the search warrant and incorporated the arguments and evidence heard at the hearing on the motion to suppress. The jury found Funches guilty as charged. The trial court sentenced Funches to concurrent terms of eight years for the level 4 felony conviction and 547 days for the level 6 felony conviction. This appeal ensued. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – The search warrant was supported by probable cause.

Funches argues that any evidence obtained pursuant to the search warrant was inadmissible because the search warrant was unsupported by probable cause that police would find evidence of dealing or possession of synthetic cannabinoids at his residence. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Cartwright v. State*, 26 N.E.3d 663, 667 (Ind. Ct. App. 2015), *trans. denied*. However, we review de novo the trial court's determination regarding the existence of probable cause to support a search warrant. *Smith v. State*, 982 N.E.2d 393, 405 (Ind. Ct. App. 2013), *trans. denied*.

Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *Id*. at 404. The Fourth Amendment states,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article 1, Section 11 of the Indiana Constitution contains nearly identical language. *State v. Spillers*, 847 N.E.2d 949, 953 (Ind. 2006). The warrant requirement is a principal protection against unnecessary intrusions into private

dwellings. *Chiszar v. State*, 936 N.E.2d 816, 825 (Ind. Ct. App. 2010), *trans. denied* (2011). To generally deter law enforcement officers from violating people's Fourth Amendment rights, the United States Supreme Court has established the exclusionary rule, which prohibits the admission of evidence seized in violation of the Fourth Amendment. *Reinhart v. State*, 930 N.E.2d 42, 48 (Ind. Ct. App. 2010). Indiana also prohibits the admission of evidence seized in violation of Article 1, Section 11. *Wright v. State*, 108 N.E.3d 307, 313-14 (Ind. 2018).

[6] These federal and state constitutional rights are codified in Indiana Code Section 35-33-5-2, which sets forth the information that an affidavit for a search warrant is required to contain. *Spillers*, 847 N.E.2d at 953. Indiana Code Section 35-33-5-2(a) provides that a search warrant affidavit must particularly describe "the house or place to be searched and the things to be searched for[,]" allege "substantially the offense in relation thereto and that the affiant believes and has good cause to believe that ... the things sought are concealed there[,]" and set "forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause."

[7] In determining whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind. 1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The duty of the reviewing court is to determine whether the

magistrate had a 'substantial basis' for concluding that probable cause existed." *Id.* (quoting *Gates*, 462 U.S. at 238-39). Probable cause is a fluid concept incapable of precise definition and must be decided based on the facts of each case. *Smith*, 982 N.E.2d at 404. "The level of proof necessary to establish probable cause is less than that necessary to establish guilt beyond a reasonable doubt." *Jellison v. State*, 656 N.E.2d 532, 534 (Ind. Ct. App. 1995). "[P]robable cause means a probability of criminal activity, not a prima facie showing." *Fry v. State*, 25 N.E.3d 237, 244 (Ind. Ct. App. 2015), *trans. denied*. "Probable cause may be established by evidence that would not be admissible at trial." *Jellison*, 656 N.E.2d at 534. Such evidence may include hearsay, which is an out-of-court statement offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c).

[8] When this Court reviews whether probable cause supported the issuance of a search warrant, "we nonetheless afford 'significant deference to the magistrate's determination'" and "*focus on whether reasonable inferences drawn from the totality of the evidence* support that determination." *Spillers*, 847 N.E.2d at 953 (quoting *Houser v. State*, 678 N.E.2d 95, 98-99 (Ind. 1997)) (emphasis added). We consider only the evidence and reasonable inferences drawn therefrom that were presented to the issuing magistrate and not post hoc justifications. *Jaggers*, 687 N.E.2d at 182; *see also Flaherty v. State*, 443 N.E.2d 340, 343 (Ind. Ct. App. 1982) ( "The issue ... is whether the affidavit itself, without additional information or testimony presented after the search warrant is executed, alleges sufficient facts upon which the issuing authority could have made an

independent determination of probable cause."). "A presumption of validity of the search warrant exists, and the burden is upon the defendant to overturn that presumption." *Rios v. State*, 762 N.E.2d 153, 156-57 (Ind. Ct. App. 2002) (quoting *Snyder v. State*, 460 N.E.2d 522, 529 (Ind. Ct. App. 1984)). "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases should be resolved in favor of upholding the warrant." *State v. Shipman*, 987 N.E.2d 1122, 1126 (Ind. Ct. App. 2013).

[9]     Here, Detective Patterson executed the search warrant affidavit, which reads as follows:

> On 02/13/2018, your affiant was conducting surveillance in the area of 1728 S Kerth Ave. Your affiant has conducted surveillance in the area several times over the past week and has observed frequent short term vehicle traffic park in front of 1728 S Kerth Av[e.], 1730 Kerth Ave, and 1732 S Kerth Ave. These houses share a common parking area off of Kerth Ave and in front of the residences. On several occasions, the vehicles would have multiple occupants and upon their arrival at the residence, only one occupant would go inside, leaving the others behind in the running vehicle. Your affiant recognizes this as common practice with illegal narcotic sales. Your affiant determined that a common vehicle is always parked in front of the residences during this short term vehicle traffic. It is a … Chrysler 300, bearing Indiana license plate 887TPG. When this vehicle is not there, no short term traffic is observed. Your affiant believes the owner of this vehicle lives at or next to 1728 S Kerth Ave and is possibly dealing from the residence. A check of the vehicle registrations show[s] the owner as Elton Funches. Funches has several prior narcotic arrests. Your affiant was advised by another detective within the Evansville-Vanderburgh Drug Task Force, that they received information from a reliable confidential

source that Funches deals in large amounts of synthetic cannabinoids. Detectives also received a tip within the past two weeks that there was heavy traffic occurring at 1730 S Kerth Ave.

On yesterday's date, 02/13/2018, your affiant observed a black mustang in front of the residence along with the Chrysler 300. Your affiant is familiar with this vehicle and its owner, Will Simpson, as being involved in illegal narcotic sales in different parts of Evansville. … The vehicle was parked in front of 1728 S Kerth Ave, with an unknown passenger seated in the vehicle. Your affiant observed the owner of the vehicle exit a residence near 1728 S Kerth Ave. Your affiant could not see exactly which residence the vehicle owner came from. The owner entered the vehicle and left the area.

Your affiant observed this vehicle make a traffic violation and had the Evansville Police Department patrol units initiate a traffic stop for the violation. An investigation revealed over one hundred grams of synthetic cannabinoids. Simpson was read his Miranda Rights and stated he understood. He agreed to speak with your affiant. Simpson told your affiant that they had bought the synthetic cannabinoids from "Boo" Funches, [who] resides at 1728 S Kerth Ave. Your affiant knows Elton Funches has an alias of "Boo" in RMS.[1] Simpson was shown a photograph of 1728 S Kerth Ave and confirmed that was where Funches lives and where they bought the synthetic cannabinoids. He went on to tell your affiant that there was approximately 5-10 pounds of synthetic cannabinoids and possibly $10,000 US currency inside the residence.

You[r] affiant applied for and was granted a judicially signed search warrant for 1728 S Kerth Ave. … On today's date,

_____

[1] We presume that RMS stands for Record Management System.

02/14/2018, detectives with the drug task force began surveillance on 1728 S Kerth Ave. Detective Knight observed an unknown male exit the residence at 1732 S Kerth Ave. This unknown male, walked over to and inside 1730 S Kerth Ave. He soon exited 1730 S Kerth Ave with vehicle keys and unlocked the … Chrysler 300 that is registered to Elton Funches. He gets inside the vehicle and removes a white plastic grocery bag. He then closes the vehicle door and takes the keys back inside 1730 S Kerth Ave. The unknown male then returns to 1732 S Kerth Ave. This is the same type of bag your affiant located in Will Simpson's vehicle the day before. That bag contained the synthetic cannabinoids that Simpson stated he had just bought from Funches.

Your affiant then learned that 1730 S Kerth Ave is a rental property. Your affiant was able to contact the owner of the rental property who confirmed that Elton Funches rents 1730 S Kerth Ave. Both 1728 and 1730 S Kerth Ave have similar features. Both are white in color, have a covered porch supported by three pillars, and share a common parking space. Your affiant believes Simpson mistakenly stated he bought the synthetic cannabinoids from 1728 S Kerth and instead meant 1730 S Kerth Ave.

Defendant's Ex. 1, Ex. Vol. 6 at 270-73.

[10]    Funches argues that the affidavit does not have sufficient indicia of probable cause because it fails to establish the reliability of the hearsay statements upon which it relies, namely, those of the confidential informant, the tip to law enforcement, and Simpson. When an affidavit is based on hearsay, Indiana Code Section 35-33-5-2(b) requires that the affidavit must either "(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the

information furnished; *or* (2) contain information that establishes that the totality of the circumstances corroborates the hearsay." (Emphasis added.) For purposes of proving probable cause, the trustworthiness of hearsay can be established in a number of ways,

> including where (1) the informant has given correct information in the past; (2) independent police investigation corroborates the informant's statements; (3) some basis for the informant's knowledge is shown; or (4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted. Depending on the facts, other considerations may come into play in establishing the reliability of the informant or the hearsay.

*Jaggers*, 687 N.E.2d at 182. "[U]ncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." *Id*. (citing *Gates*, 462 U.S. at 227).

[11] In addressing Funches' argument, we begin by noting that it is premised on the faulty presumption that the affidavit attempts to establish probable cause based solely on the hearsay statements. To the contrary, the affidavit does not rely exclusively, or even predominantly, on the hearsay statements; it also contains considerable "facts known to the affiant through personal knowledge," s*ee* Ind. Code § 35-33-5-2(a), and a probable cause determination is based on *all the circumstances* set forth in the affidavit. *See Jaggers*, 687 N.E.2d at 181.

[12] The affidavit reveals that Detective Patterson conducted surveillance of the area in front of 1728 and 1730 S. Kerth Avenue several times over the course of a week. The two houses share a common parking area in front of the residences.

Detective Patterson observed vehicles with multiple passengers stop in front of the houses, with one person leaving the vehicle to go inside one of the houses while the other passengers waited with the vehicle running. Detective Patterson recognized this behavior "as a common practice with illegal narcotics sales." Defendant's Ex. 1, Ex. Vol. 6 at 272. When Detective Patterson observed this behavior, Funches' Chrysler 300 was always parked in front of the houses. When Funches' Chrysler 300 was not present, Detective Patterson did not observe this "common practice." Funches has several prior narcotic drug arrests. Another detective advised Detective Patterson that a reliable confidential source informed police that Funches deals in large amounts of synthetic cannabinoids. Also, police received a tip that there was heavy traffic occurring at 1730 S. Kerth Avenue. The information obtained by Detective Patterson through his own surveillance and his experience and knowledge as a law enforcement officer support a reasonable inference that activity common to illegal drug sales was occurring at or near 1730 S. Kerth Avenue and that Funches was likely involved in that activity, and therefore the totality of the circumstances corroborates the hearsay statements. *See* Ind. Code § 35-33-5-2(b)(2).

[13] In addition to the above, the affidavit also shows that Detective Patterson observed a vehicle belonging to Will Simpson, who Detective Patterson knew to have been involved in illegal narcotic sales, parked in front of 1728 and 1730 S. Kerth Avenue with an unknown passenger seated inside the vehicle. Detective Patterson saw Simpson exit one of the houses near 1728 S. Kerth

Avenue, although he could not see exactly which house Simpson left. After Simpson drove away, he was pulled over for a traffic violation, and officers found over one hundred grams of synthetic cannabinoids in a white grocery bag. Simpson told police that he bought the drug from "Boo" Funches, and Detective Patterson knew that Funches had an alias of "Boo." Defendant's Ex. 1, Ex. Vol. 6 at 272. Simpson was shown a picture of the house at 1732 S. Kerth Avenue and believed that it was Funches' house.

[14] After Detective Patterson was issued a search warrant for 1728 S. Kerth Avenue, police officers conducted additional surveillance of the area. Detective Knight[2] saw a man exit 1732 S. Kerth Avenue, walk over to and go inside 1730 S. Kerth Avenue, then shortly thereafter exit that residence with car keys. The man unlocked Funches' Chrysler 300, collected a white grocery bag that was the same kind of bag that held the synthetic cannabinoids found in Simpson's vehicle, and then returned the car keys to 1730 S. Kerth Avenue before returning to 1732 S. Kerth Avenue. Detective Patterson then learned that Funches rented 1730 S. Kerth Avenue. 1730 S. Kerth Avenue has similar features to 1728 S. Kerth Avenue. Here again, the totality of the circumstances corroborates Simpson's hearsay statement that Funches had been dealing

---

[2] A police officer may properly rely on information obtained from a fellow officer under the collective-knowledge doctrine. *McGrath v. State*, 95 N.E.3d 522, 529 (Ind. 2018). The collective- or imputed-knowledge doctrine applies to both investigative stops and search warrants. *Id.* "Unlike the hearsay requirement of the warrant statute, designed to ensure an informant's veracity, the collective-knowledge doctrine presumes a fellow officer's credibility, thus 'no special showing of reliability need be made as a part of the probable cause determination.'" *Id.* at 530 (quoting 2 WAYNE R. LAFAVE, SEARCH & SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 3.5(a) (5th ed. 2017)).

synthetic cannabinoids, and Detective Patterson himself confirmed which house was Funches'.[3] We conclude that all the circumstances in the affidavit and the reasonable inferences arising therefrom support the magistrate's determination that there was probable cause to believe that evidence pertaining to the crime of dealing or possession of synthetic cannabinoids would be found at Funches' premises. We conclude that the search warrant was issued in accordance with the constitutional and statutory rights guaranteed to Funches.[4] Accordingly, the trial court did not abuse its discretion in admitting the evidence.

## Section 2 – The trial court did not clearly err in overruling Funches' *Batson* objection.

[15] During voir dire, defense counsel objected to one of the State's peremptory strikes as follows:

> I'm going to raise a *Batson* challenge on this one. …. [That prospective juror] is the only African-American in the [jury pool].

---

[3] Funches argues that Simpson's hearsay statements were unreliable, citing *Spillers*, 847 N.E.2d 949. *Spillers* is clearly distinguishable. In *Spillers*, the State argued that the hearsay statement at issue was reliable because it was a statement against the penal interest of the person who made it. Our supreme court rejected that argument because the person who made the statement had been arrested for drug possession, and "his tip was less a statement against his penal interest than an obvious attempt to curry favor with the police." *Id*. at 956. Here, unlike the hearsay statement in *Spillers*, the reliability of Simpson's hearsay statement is based on the corroboration of the totality of circumstances.

[4] Funches also argues that the search of his house was unreasonable under the Indiana Constitution based on the factors articulated by our supreme court in *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). However, he has waived that issue by raising it for the first time on appeal. *See Howard v. State*, 818 N.E.2d 469, 477 (Ind. Ct. App. 2004) ("A defendant may not raise one ground for objection at trial and argue a different ground on appeal. The failure to raise an issue at trial waives the issue for appeal.") (citation omitted), *trans. denied* (2005).

.... He said, I'm not going to hold law enforcement to a lower standard, I'm not going to disbelieve them automatically out of the gate, I'm going to consider all of the evidence. Nothing with [that prospective juror] that stood out from anybody else, any other Caucasian jurors.

Tr. Vol. 2 at 70. The prosecutor responded,

Yes. My response to that would be there's no systematic part or reason that we're doing that. He is on federal parole for voluntary manslaughter. (inaudible). I didn't want to get into [that] in front of everybody … because I didn't want him to feel very uncomfortable, but he is on federal parole.

*Id.* The trial court found that because the prospective juror was the only African-American member of the jury pool, Funches had made a prima facie case of discrimination. *Id.* at 70-71. The trial court then asked the prosecutor to confirm what crime the juror was on federal parole for. *Id.* at 71. The prosecutor showed the trial court the juror's questionnaire, pointing out that the juror "gave the cause number, it's a federal cause number." *Id.* The trial court then ruled, "[B]ased on what I've seen in the questionnaire and [the prosecutor's] argument, I'll allow that [peremptory] challenge. Okay, your *Batson* objection is overruled." *Id.* After a recess, the prosecutor informed the trial court and Funches that the prosecutor had discovered that the juror had been convicted of a state crime and that his parole had ended in 2007. *Id.* at 76-77. The prosecutor also explained that he had originally been under the impression that the juror was still on parole based on information from the

"NCIC."[5] *Id*. at 76. The trial court asked whether there were jurors who had been selected who had felony convictions, and the prosecutor informed the trial court that there were not. *Id*. at 77. The trial court then affirmed its previous ruling. *Id*.

[16] Funches argues that his rights under the Fourteenth Amendment to the United States Constitution were violated by the State's use of a peremptory strike to strike the only African-American prospective juror. "Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Batson*, 476 U.S. at 86. "The exclusion of even a sole prospective juror based on race, ethnicity, or gender violates the Fourteenth Amendment's Equal Protection Clause." *Addison v. State*, 962 N.E.2d 1202, 1208 (Ind. 2012). "Pursuant to *Batson* and its progeny, a trial court must engage in a three-step process in evaluating a claim that a peremptory challenge was based on race." *Cartwright*, 962 N.E.2d at 1220. At the first step, the defendant must make a prima facie showing that there are "circumstances raising an inference that discrimination occurred." *Addison*, 962 N.E.2d at 1208. At the second step, if the defendant makes a prima facie showing, the burden shifts to the prosecution to "'offer a race-neutral basis for striking the juror in question.'" *Id*. at 1209 (quoting *Snyder*, 552 U.S. at 477). "A race-neutral explanation means 'an

---

[5] We presume this refers to the National Crime Information Center.

explanation based on something other than the race of the juror.'" *Higher v. State*, 854 N.E.2d 823, 827 (Ind. 2006) (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Addison*, 962 N.E.2d at 1209 (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). "[T]he issue is the facial validity of the prosecutor's explanation." *McCormick v. State*, 803 N.E.2d 1108, 1111 (Ind. 2004) (quoting *Purkett*, 514 U.S. at 768).

[17] Even if the State's reasons appear on their face to be race-neutral, at the third step, the trial court must perform the essential task of assessing whether the State's facially race-neutral reasons are credible. *Addison*, 962 N.E.2d at 1209. The second and third steps must not be conflated. *See id*. at 1210 ("The analytical structure established by *Batson* cannot operate properly if the second and third steps are conflated.") (quoting *United States v. Rutledge*, 648 F.3d 555, 559 (7th Cir. 2011)). In determining whether the State's explanation for the strike is credible and not a pretext for discriminatory intent, the trial court must consider the State's explanation "in light of all evidence with a bearing on it." *Id*. (quoting *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005)); *see also Snyder*, 552 U.S. at 478 ("[I]n considering a *Batson* objection, or in reviewing a ruling claimed to be *Batson* error, all of the circumstances that bear upon the issue of racial animosity must be consulted."). Although this third step requires the trial court to evaluate "the persuasiveness of the justification" proffered by the prosecutor, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Highler*, 854 N.E.2d at

828 (quoting *Purkett*, 514 U.S. at 768). At this stage, the defendant may offer additional evidence to demonstrate that the prosecutor's reasons are pretextual. *Addison*, 962 N.E.2d at 1210. Then, "in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination." *Id*. at 1209 (quoting *Snyder*, 552 U.S. at 477).

[18] "[U]pon appellate review, a trial court's decision concerning whether a peremptory challenge is discriminatory is given great deference, and will be set aside only if found to be clearly erroneous." *Cartwright*, 962 N.E.2d at 1221 (quoting *Forrest v. State*, 757 N.E.2d 1003, 1004 (Ind. 2001)); *see also Jeter v. State*, 888 N.E.2d 1257, 1265 (Ind. 2008) ("On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous.") (citing *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008)), *cert. denied*. "The trial court's conclusion that the prosecutor's reasons were not pretextual is essentially a finding of fact that turns substantially on credibility. It is therefore accorded great deference." *Highler*, 854 N.E.2d at 828. We also note that "where … a prosecutor has offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing of purposeful discrimination becomes moot." *Cartwright*, 962 N.E.2d at 1222; *accord Addison*, 962 N.E.2d at 1209 n.2.

[19] Funches' argument on appeal appears to focus on the third step. Specifically, he argues that this Court should find that the prosecutor's reason for striking the only African-American is pretextual because the prosecutor later admitted that

the prospective juror was no longer on parole and because the juror answered questions during voir dire in a manner that indicated that he would be fair in this case. Funches further argues that the only reason that the prosecutor struck the juror was because he had a prior criminal record and such a reason should not be sufficient to remove the only African-American member of the jury pool. We are unpersuaded by Funches' argument.

[20] When Funches' made his *Batson* challenge, the trial court had the prospective juror's questionnaire. That questionnaire asked, "Have you or any of your immediate family members been charged with or convicted of a felony? If yes, please explain:" Court's Ex. 1, Ex. Vol. 5 at 97. The prospective juror wrote, "Myself 1986 Attempted Voluntary Manslaughter." *Id.* He also wrote the cause number for his case. *Id.* Although it was later revealed that the NCIC database had mistakenly provided a federal parole number for the juror, the trial court and Funches were informed of this mistake. Funches does not assert, nor does the record suggest, that the prosecutor intentionally attempted to mislead the judge. Further, it is undisputed that the juror had been either charged with or convicted of attempted voluntary manslaughter, which is a serious offense. It is the trial court's task to judge the credibility of the prosecutor, and we defer to its conclusion.[6] *See Highler*, 854 N.E.2d at 828. Therefore, we cannot say that the trial court clearly erred in finding that the

---

[6] Despite the juror's representations that he could be fair in this case, it would not be unreasonable for the State to be concerned that the juror might be biased against the State because of his criminal record.

State's reason for striking the juror was not a pretext for intentional discrimination.

[21] Affirmed.

Baker, J., and Kirsch, J., concur.